Kenny TRIBBITT,[1] Petitioner
Below–Appellant,

v.

Yvonne TRIBBITT, Respondent
Below–Appellee.

No. 202, 2008.

Supreme Court of Delaware.

Submitted: Oct. 17, 2008.
Decided: Dec. 23, 2008.

---

1. The Court *sua sponte* assigned pseudonyms to the parties by Order dated May 5, 2008.

Del.Supr. Ct. R. 7(d).

Kenny Tribbitt, pro se.

Yvonne Tribbitt, pro se.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

The petitioner-appellant, Kenny Tribbitt (the "Husband"), filed an appeal from the Family Court's judgments dated February 8, March 18, and March 27, 2008, regarding the division of marital property and the award of alimony to the respondent-appellee, Yvonne Tribbitt (the "Wife").[2] In this appeal, the Husband claims that the Family Court erred when it: (1) relied on information outside the record to determine the Wife's earning capacity; (2) failed to take into account the cost of child care and private school tuition in its calculation of the Husband's alimony obligation; and (3) deemed the Wife to be entitled to alimony during a period when the Wife was not dependent.

We have determined that the Husband's first two claims are correct. Because we conclude that the Family Court erred, we reverse the Family Court's judgments and remand this matter to the Family Court for further proceedings in accordance with this opinion.

### Facts

The record reflects that the parties were married on August 16, 1986, and divorced by order of the Family Court on August 2, 2006. The Family Court retained jurisdiction to decide, among other things, the ancillary matters of property division and alimony. A bifurcated hearing on ancillary matters was held on September 7, 2007, and November 5, 2007. In its order dated February 8, 2008, the Family Court divided the marital property, allocated the marital debt between the parties and awarded alimony to the Wife.

### Motion for Reargument

On February 19, 2008, the Husband filed a motion to correct clerical mistakes and for reargument in the Family Court. In the motion, the Husband argued that the Family Court had erred in several respects in its February 8, 2008, order. In an order dated March 18, 2008, the Family Court granted the Husband's request to modify the timing of his first alimony payment, granted his request to credit him with a pre-marital asset worth $4,700 and granted his request to purchase the Wife's

---

2. After the opening brief was filed, the Husband's counsel was permitted to withdraw. Counsel for the Wife was permitted to withdraw prior to the filing of the Wife's answering brief. In lieu of an answering brief, the Wife filed, *pro se*, a request that the Court decide this appeal on the basis of the facts and the law used by the Family Court.

share of certain real property that had been ordered sold. The Family Court rejected the Husband's argument that its decision regarding the Wife's earning capacity was improperly based on information outside the record.

On March 25, 2008, the Husband filed a second motion to correct clerical mistakes and for reargument. In an order dated March 27, 2008, the Family Court granted the Husband's request to correct the percentage according to which it had divided the parties' marital property and marital debt. However, the Family Court denied the Husband's request to credit him with child care and private school tuition expenses for purposes of its alimony calculation.

### Standard of Review

This Court's review of appeals from the Family Court extends to a review of the facts and the law as well as a review of the inferences and deductions made by the judge.[3] This Court will not disturb findings of fact unless they are clearly wrong and justice requires that they be overturned.[4] If the Family Court has correctly applied the law, our standard of review is abuse of discretion.[5] Errors of law are reviewed de novo.[6]

### Internet Search Without Notice

The Husband's first claim is that the Family Court improperly relied on information outside the record to determine the Wife's earning capacity, thereby under-

mining the property division and alimony calculations. The record reflects that the Husband called a vocational expert named Ellen Lock to testify at the hearing on his behalf. The parties stipulated to Lock's expert qualifications. Lock testified that she had interviewed the Wife in July 2007 as part of her evaluation of the Wife's earning capacity and had conducted independent research regarding the job market. Based on the Wife's education, experience and skills, Lock offered her expert opinion that the Wife could find a position in business making $14 to $17 per hour, or $30,000 to $36,000 per year.[7] Lock did not alter her opinion under cross-examination by the Wife's counsel.

In its February 8, 2008, decision, the Family Court stated that it had determined the Wife's earning capacity based on certain aspects of Lock's opinion and an internet search conducted several months after the hearing. The Family Court stated:

> An internet search revealed that as of February 8, 2008, there were well over 50 ... full-time positions, with hourly wages ranging from $10 to $13 per hour. Therefore, the Court shall attribute the Wife with full-time hours in a data entry/customer service position, earning $11.50 per hour, which translates into annual earnings of $23,920.[8]

In its March 18, 2008, decision on the Husband's motion for reargument, the Family Court again stated:

---

3. *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del.1979).

4. *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).

5. *Jones v. Lang*, 591 A.2d 185, 186 (Del.1991).

6. *In re Heller*, 669 A.2d 25, 29 (Del.1995).

7. At one point during Lock's testimony, the trial judge asked if a bad credit history would

affect the Wife's ability to get a job with a bank. When Lock stated that it would not, the judge said, "Well, I disagree. I think they do hold that against you. You should probably check that out.... I've read a lot about that. So, I'm going to take ... notice that I'm aware of that."

8. *Tribbitt v. Tribbitt*, File No. CN90–08394, Pet. No. 06–19054, at 14, 2008 WL 1952476 (Del.Fam.Ct. Feb. 8, 2008) (citing Careerbuilder.com).

Husband asserts that [the Family Court's findings regarding Wife's earning capacity are] against the weight of the evidence adduced at trial.... [W]hile the [evidence rules] govern the *admissibility* of expert testimony, it is within the province of the fact-finder to determine the credibility of the testimony and what weight it should be given. The Family Court accepted Ms. Lock's testimony regarding Wife's transferable skills and appropriate positions for which Wife would be qualified. However, the Court found that Ms. Lock's testimony regarding Wife's earning capacity [was] inflated with respect to a person of Wife's age, employment history and significant length of time out of the work-force.[9]

This Court has held that a decision of the Family Court that rejects unrefuted expert testimony concerning a party's earning capacity is, by definition, not supported by evidence in the record and, therefore, must be reversed.[10] Moreover, while a judge may take judicial notice of a fact outside the record, that fact must not be subject to reasonable dispute and the parties must be given prior notice and an opportunity to challenge judicial notice of that fact.[11] In this case, neither of these requirements for judicial notice was met.

Rule 2.9(C) of the ABA Model Code of Judicial Conduct provides: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed."[12] Generally, that well-established principle is assiduously adhered to by members of the Delaware judiciary. Although the Delaware Judges' Code of Judicial Conduct does not address this issue directly, Model Rule 2.9(A)(2) regarding *ex parte* communications provides some guidance. That Rule permits a judge to obtain the written advice of a disinterested expert "if the judge gives advance notice to the parties ... and affords the parties reasonable opportunity to object and respond."[13] Similarly, D.R.E 201(e) requires that the parties be given prior notice that the judge is considering taking judicial notice of a fact and afforded an opportunity to be heard.[14] Accordingly, we hold that, in determining the Wife's earning capacity, the Family Court committed reversible error when it rejected unrefuted testimony by the Husband's expert and substituted for that testimony the results of its own internet search.[15]

### Child Care and Tuition Expenses

The Husband's second claim is that the Family Court improperly failed to take

---

9. *Tribbitt v. Tribbitt,* File No. CN90–08394, Pet. No. 06–19054, at 14 (Del.Fam.Ct. March 18, 2008).

10. *Saldanha v. Saldanha,* 2006 WL 3952021, at *4 (Del.Supr.). *See also Turbitt v. Blue Hen Lines, Inc.,* 711 A.2d 1214, 1215–16 (Del. 1998) (explaining that the Industrial Accident Board may not substitute its administrative expertise for unrefuted medical evidence regarding a claimant's disability).

11. D.R.E. 201; *Fawcett v. State,* 697 A.2d 385, 388 (Del.1997).

12. Model Code. of Jud. Conduct R. 29(C) (2007).

13. Model Code of Jud. Conduct R. 29(A)(2).

14. *See* D.R.E. 201(e).

15. *See Ney v. Ney,* 917 A.2d 863, 866–67 (Pa.Super.2007). We also note that the Family Court judge should not have taken "notice" of information she had "read about" to support her view that banks would be less likely to hire a candidate with a bad credit history, a view contrary to that of the Husband's expert.

into account the cost of child care and private school tuition in its calculation of Husband's alimony obligation. Under title 13, section 1512(c) of the Delaware Code, an award of alimony must be in such amount and for such time as the Family Court deems just, after consideration of all relevant factors, including: (1) the financial resources of the party seeking alimony; (2) the time and expense necessary for the party seeking alimony to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the physical and emotional condition of the parties; (6) the contribution made by either party to the education and earning capacity of the other party; (7) the ability of the other party to meet his or her needs while paying alimony; (8) the tax consequences of alimony; (9) whether either party has foregone or postponed opportunities for education or employment during the marriage; and (10) any other factor the Family Court expressly finds is just and appropriate to consider.[16]

The record reflects that the Family Court included the costs of child care and private school tuition when it calculated the amount of child support owed by the Husband, but did not credit the Husband with those expenses when it calculated the amount of alimony owed by the Husband to the Wife. In its March 27, 2008, order on the Husband's second motion for reargument, the Family Court stated:

> If the Court were to allow Husband to claim child care and tuition expenses again in the alimony calculation, then he would, in essence, be claiming the aforesaid expenses twice, a result which is

unseemly. Therefore, the Court finds it exercised appropriate discretion in precluding Husband from doubling his expense for child care and tuition.[17]

■ The Husband claims that, because he is paying the cost of child care and private school tuition for the parties' child as part of his child support obligation, those amounts should be reflected in the calculation of the amount of income he has available for the payment of alimony to the Wife. We agree. Unlike a case of "double dipping," the amount of the Husband's child support obligation is relevant under the statute for purposes of calculating the amount of his income and, therefore, the amount of his alimony obligation.[18] As such, we hold that the Family Court's determination that it was precluded from crediting the Husband with child care and tuition expenses for purposes of calculating his alimony obligation was erroneous.

### Alimony Claim Waived

■ The Husband's third claim is that the Family Court improperly deemed the Wife to be dependent. Therefore, he argues that the Family Court erroneously concluded that the Wife was entitled to alimony between April 12, 2006, the date of a previous order denying spousal support to the Wife, and February 8, 2008, the date of the order on ancillary matters. An award of alimony by the Family Court is governed by title 13, section 1512 of the Delaware Code.[19] Under section 1512(b), a party may be awarded alimony only if he or she is found to be dependent upon the other party after consideration of all relevant factors in section 1512(c) in that he or she: (1) is dependent upon the other party

---

16. Del.Code Ann. tit. 13, § 1512(c) (2008).

17. *Tribbitt v. Tribbitt,* File No. CN90–8394, Pet. No. 06–19054, at 2–3 (Del.Fam.Ct. Mar. 27, 2008).

18. Del.Code Ann. tit. 13, § 1512(c)(7). The amount of child support received by the Wife is, likewise, relevant to the calculation of her income for purposes of her entitlement to alimony. Del.Code Ann. tit. 13, § 1512(c)(1).

19. Del.Code Ann. tit. 13, § 1512.

for support; (2) lacks sufficient property to provide for his or her reasonable needs; and (3) is unable to support himself or herself through appropriate employment.[20]

While the Husband asserts that he has preserved his third claim for appeal by raising it in his first motion for reargument, the record reflects otherwise. In that motion, the Husband did not request that the Family Court deny alimony to the Wife between the dates of April 12, 2006, and February 8, 2008. Rather, he requested only that the Family Court order that the Husband's first alimony check be due fifteen days after the marital residence was sold. Moreover, the Wife's response to the motion for reargument addresses only this latter request, as does the Family Court's March 18, 2008, order on the Husband's motion for reargument. The record further reflects that this issue was not raised in the Husband's second motion for reargument, which indicates that the Husband was satisfied that all of the issues he raised in his prior motion had been properly addressed. Because we conclude that the Husband's third claim was not fairly presented to the Family Court in the first instance, we decline to address it for the first time in this appeal.[21]

### Conclusion

The judgments of the Family Court are reversed and this matter is remanded to the Family Court for further proceedings in accordance with this opinion. Jurisdiction is not retained.

---

**20.** *Id.* § 1512(b).

**21.** Del.Supr. Ct. R. 8.