IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT FUND, CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, and ROBERT FRIEDMAN, Derivatively and on Behalf of SANCHEZ ENERGY CORPORATION, | § § § § § § § | No. 702, 2014 |
| Plaintiffs Below-Appellants, | § § § | Court Below: Court of Chancery of the State of Delaware, in and for Sussex County |
| v. | § § | |
| A.R. SANCHEZ, JR., ANTONIO R. SANCHEZ, III, GILBERT A. GARCIA, GREG COLVIN, ALAN G. JACKSON, EDUARDO SANCHEZ, ALTPOINT CAPITAL PARTNERS LLC, ALTPOINT HOLDINGS, LLC, SANCHEZ RESOURCES, LLC, and SANCHEZ ENERGY CORPORATION, | § § § § § § § § § § § | C.A. No. 9132-VCG |
| Defendants Below-Appellees. | § | |

Submitted: September 24, 2015
Decided: October 2, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon appeal from the Court of Chancery. **REVERSED**.

Pamela S. Tikellis, Esquire, Scott M. Tucker, Esquire, Tiffany J. Cramer, Esquire, Vera G. Belger, Esquire, Chimicles & Tikellis LLP, Wilmington, Delaware; Stuart M. Grant, Esquire (*Argued*), Michael J. Barry, Esquire, Nathan A. Cook, Esquire, Bernard C. Devieux, Esquire, Grant & Eisenhofer, P.A., Wilmington, Delaware, for Appellants.

John D. Hendershot, Esquire (*Argued*), Andrew J. Peach, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, for Appellees Gilbert A. Garcia, Alan G. Jackson, and Greg Colvin.

Kurt M. Heyman, Esquire, Patricia L. Enerio, Esquire, Dawn Kurtz Compton, Esquire, Wilmington, Delaware, for Appellee Sanchez Energy Corp.

William M. Lafferty, Esquire, Leslie A. Polizoti, Esquire, Lauren K. Neal, Esquire, Morris, Nichols, Arsht, & Tunnell LLP, Wilmington, Delaware; M. Scott Barnard, Esquire, Michelle A. Reed, Esquire, Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas, for Appellees A.R. Sanchez, Jr. and A.R. Sanchez, III.

Peter B. Ladig, Esquire, Jason C. Jowers, Esquire, Elizabeth A. Powers, Esquire, Morris James LLP, Wilmington, Delaware; R. Thaddeus Behrens, Esquire, Daniel H. Gold, Esquire, Haynes and Boone LLP, Dallas, Texas, for Appellees Eduardo Sanchez and Sanchez Resources, LLC.

Rolin P. Bissell, Esquire, Tammy L. Mercer, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Michael C. Holmes, Esquire, Jeremy K. Reichman, Esquire, Vinson & Elkins LLP, Dallas, Texas, for Appellees Altpoint Capital Partners LLC and Altpoint Sanchez Holdings LLC.

**STRINE**, Chief Justice:

# I. INTRODUCTION

Determining whether a plaintiff has pled facts supporting an inference that a director cannot act independently of an interested director for purposes of demand excusal under *Aronson*[1] can be difficult. And this case illustrates that. But in that determination, it is important that the trial court consider all the particularized facts pled by the plaintiffs about the relationships between the director and the interested party in their totality and not in isolation from each other, and draw all reasonable inferences from the totality of those facts in favor of the plaintiffs. In this case, the plaintiffs pled not only that the director had a close friendship of over half a century with the interested party, but that consistent with that deep friendship, the director's primary employment (and that of his brother) was as an executive of a company over which the interested party had substantial influence. These, and other facts of a similar nature, when taken together, support an inference that the director could not act independently of the interested party. Because of that, the plaintiffs pled facts supporting an inference that a majority of the board who approved the interested transaction they challenged could not consider a demand impartially. Therefore, we reverse and remand so that the plaintiffs can prosecute this derivative action.

# II. BACKGROUND

This case involves an appeal from a complicated transaction between a private company whose equity is wholly owned by the family of A.R. Sanchez, Jr., Sanchez Resources, LLC (hereinafter, the "Private Sanchez Company"), and a public company in

---

[1] *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).

which the Sanchez family constitutes the largest stockholder bloc with some 16% of the shares and that is dependent on the Private Sanchez Company for all of its management services, Sanchez Energy Corporation (the "Sanchez Public Company"). The transaction at issue required the Sanchez Public Company to pay $78 million to: i) help the Private Sanchez Company buy out the interests of a private equity investor; ii) acquire an interest in certain properties with energy-producing potential from the Private Sanchez Company; iii) facilitate the joint production of 80,000 acres of property between the Sanchez Private and Public Companies; and iv) fund a cash payment of $14.4 million to the Private Sanchez Company. In this derivative action, the plaintiffs allege that this transaction involved a gross overpayment by the Sanchez Public Company, which unfairly benefited the Private Sanchez Company by allowing it to use the Sanchez Public Company's funds to buy out their private equity partner, obtain a large cash payment for itself, and obtain a contractual right to a lucrative royalty stream that was unduly favorable to the Private Sanchez Company and thus unfairly onerous to the Sanchez Public Company. As to the latter, the plaintiffs allege that the royalty payment was not only unfair, but was undisclosed to the Sanchez Public Company stockholders, and that it was the Sanchez family's desire to conceal the royalty obligation that led to what can be fairly described as a convoluted transaction structure.

The Court of Chancery dismissed the complaint, finding that the defendants were correct in their contention that the plaintiffs had not pled demand excusal under

2

*Aronson*.[2]   In a thorough and careful opinion, the Court of Chancery examined both prongs of *Aronson* and concluded that the plaintiffs had not satisfied their pleading burden to show that demand was excused under either.[3]   On appeal, the plaintiffs argue that the Court of Chancery was wrong on both scores.

But, in resolving this appeal, we focus on only one issue, which is outcome-determinative.  The parties agree that two of the five directors on the Sanchez Public Company board were not disinterested in the transaction:  A.R. Sanchez, Jr., the Public Company's Chairman; and his son, Antonio R. Sanchez, III, the Sanchez Public Company's President and CEO.  For the sake of clarity, we refer to the patriarch of the Sanchez family, A.R. Sanchez, Jr., as Chairman Sanchez.

The question for *Aronson* purposes was therefore whether the plaintiffs had pled particularized facts raising a pleading-stage doubt about the independence of one of the other Sanchez Public Company directors.  If they had, the defendants and the Court of Chancery itself recognized that the plaintiffs would have pled grounds for demand excusal under *Aronson*.

### III.   ANALYSIS

To plead demand excusal under Rule 23.1, a plaintiff in a derivative action must plead particularized facts creating a "reasonable doubt" that either "(1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product

---

[2] *In re Sanchez Energy Derivative Litig.*, 2014 WL 6673895, at *13 (Del. Ch. Nov. 25, 2014).
[3] *Id.* at *5–12.

of a valid exercise of business judgment.[4]  Although there is a heightened burden under Rule 23.1 to plead particularized facts, when a motion to dismiss for failure to make a demand is made, all reasonable inferences from the pled facts must nonetheless be drawn in favor of the plaintiff in determining whether the plaintiff has met its burden under *Aronson*.[5]

The closest question below centered on director Alan Jackson.  The complaint bases its challenge to Jackson's independence on two related grounds.  First, it pleads that '[Chairman] Sanchez and Jackson have been close friends for more than five decades.'[6]  Consistent with this allegation, the complaint indicates that when Chairman Sanchez ran for Governor of Texas in 2012, Jackson donated $12,500 to his campaign.[7]

Second, the complaint pleads facts supporting an inference that Jackson's personal wealth is largely attributable to business interests over which Chairman Sanchez has substantial influence.  According to the complaint, Jackson's full-time job and primary source of income is as an executive at IBC Insurance Agency, Ltd.[8]  IBC Insurance provides insurance brokerage services to the Sanchez Public Company and other Sanchez affiliates.[9]  But even more importantly, IBC Insurance is a wholly owned subsidiary of International Bancshares Corporation ('IBC'), a company of which Chairman Sanchez is

---

[4] *Aronson*, 473 A.2d at 814.
[5] *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008); *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004).
[6] Complaint ¶ 75(a).
[7] *Id.* ¶ 75(b).
[8] *Id.* ¶ 75(a).
[9] *Id.*

the largest stockholder[10] and a director who IBC's board has determined is not independent under the NASDAQ Marketplace Rules.[11] Not only does Jackson work full-time for IBC Insurance, so too does his brother.[12] Both of them service the work that IBC Insurance does for the Sanchez Public and Private Companies.[13] The complaint also alleges that the approximately $165,000 Jackson earned as a Sanchez Public Company director constituted "30–40% of Jackson's total income for 2012."[14]

The plaintiffs contend that these pled facts support an inference that Jackson cannot act independently of Chairman Sanchez, because he is Sanchez's close friend of a half century, derives his primary employment from a company over which Sanchez has substantial control, has a brother in the same position, and that the coincidence of these personal and business ties are, well, no coincidence. In its opinion, the Court of Chancery disagreed with the plaintiffs. After examining all of these factors, the Court of Chancery concluded that the plaintiffs had not pled facts overcoming the presumption that Jackson was independent.[15] The defendants defend the Court of Chancery's

---

[10] *Id.* ¶ 23.

[11] *Id.* ¶ 75(a) n.13.

[12] *Id.* ¶ 75(a).

[13] *Id.*

[14] *Id.* ¶ 75(b). In their briefs and oral argument, the plaintiffs cite to additional facts, such as an article indicating that Chairman Sanchez and Jackson have been best friends since fourth grade, and quoting Jackson stating that he has followed Sanchez's lead since then. *See* Opening Br. at 9 n.4. We cite this not because we rely upon it, as we do not. Rather, we note that the proper way for the plaintiffs to have used these materials is by seeking to amend their complaint. It is not fair to the defendants, to the Court of Chancery, or to this Court, nor is it proper under the rules of either court, for the plaintiffs to put facts outside the complaint before us. Perhaps as important for stockholder plaintiffs themselves, this approach hazards dismissal with prejudice on the basis of a record the plaintiffs had the fair chance to shape and that omitted facts they could have, but failed to, plead.

[15] *In re Sanchez Energy*, 2014 WL 6673895, at *5–6.

reasoning on appeal, and stress that it relied on precedent such as *Beam v. Stewart*,[16] and reflected a careful assessment of the pled facts and whether they were sufficient to compromise Jackson's independence under *Aronson*. They also note, as did the Court of Chancery,[17] that this Court has admonished derivative plaintiffs to use the books and record process to aid them in satisfying *Aronson*'s stringent pleading test and that, if the plaintiffs came up short, it was their own fault for not using this avenue.

We agree with the defendants that the Court of Chancery diligently grappled with this close question and justified its decision that the plaintiffs had not pled facts supporting an inference that Jackson could not act independently of Sanchez in terms of relevant precedent. But, employing the *de novo* review that governs this appeal,[18] we do not come to the same conclusion as the Court of Chancery. The reason for that is that the Court of Chancery's analysis seemed to consider the facts the plaintiffs pled about Jackson's personal friendship with Sanchez and the facts they pled regarding his business relationships as entirely separate issues. Having parsed them as categorically distinct, the Court of Chancery appears to have then concluded that neither category of facts on its own was enough to compromise Jackson's independence for purposes of demand excusal.[19]

---

[16] 845 A.2d 1040 (Del. 2004).

[17] *See In re Sanchez Energy*, 2014 WL 6673895, at *4 ("It is notable that the requirement to plead demand futility with particularity precedes the plaintiff's ability to conduct discovery. This apparent dilemma for stockholder plaintiffs is relieved in part by Section 220 of the Delaware General Corporation Law, which permits stockholders to obtain information in order to properly plead a derivative case.").

[18] *Wood*, 953 A.2d at 140; *Beam*, 845 A.2d at 1048.

[19] *See In re Sanchez Energy*, 2014 WL 6673895, at *5–6 ("Other than the allegation that Jackson donated $12,500 to Sanchez Jr.'s Texas gubernatorial campaign in 2002, the Complaint lacks

The problem with that approach is that our law requires that all the pled facts regarding a director's relationship to the interested party be considered in full context in making the, admittedly imprecise, pleading stage determination of independence.[20] In that consideration, it cannot be ignored that although the plaintiff is bound to plead particularized facts in pleading a derivative complaint, so too is the court bound to draw all inferences from those particularized facts in favor of the plaintiff, not the defendant, when dismissal of a derivative complaint is sought.[21]

Here, the plaintiffs did not plead the kind of thin social-circle friendship, for want of a better way to put it, which was at issue in *Beam*. In that case, we held that allegations that directors "moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' . . . are insufficient, without more, to rebut the presumption of independence."[22] In saying that, we did not suggest that deeper human friendships could not exist that would have the effect of compromising a director's independence. When, as here, a

any description of the friendship between Jackson and Sanchez Jr.; I therefore cannot reasonably infer that Jackson lacked independence on that basis. In addition, the Plaintiffs allege that Jackson [had economic ties to Sanchez]. . . . Jackson's financial interest in continued employment with IBC cannot provide an adequate basis to infer that Jackson lacked independence from Sanchez Jr.").

[20] *E.g.*, *Kahn v. Portnoy*, 2008 WL 5197164, at *12 (Del. Ch. Dec. 11, 2008) ("I am convinced that these relationships, *taken together*, are sufficient to raise a reasonable doubt that Koumantzelis would be capable of exercising independent business judgment.") (emphasis added); *Cal. Pub. Emps.' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *9 (Del. Ch. Dec. 18, 2002) ("If taken separately, none of the individual allegations would be adequate to raise a reasonable doubt as to Mandigo's disinterest or independence. . . . Taken together, they give this Court reason to doubt that Mandigo is disinterested and independent.").

[21] *See Wood*, 953 A.2d at 140; *Beam*, 845 A.2d at 1048.

[22] *Beam*, 845 A.2d at 1051; *see also id.* at 1051–52 ("Mere allegations that they move in the same business and social circles, *or* a characterization that they are close friends, is not enough to negate independence for demand excusal purposes.") (emphasis added).

7

plaintiff has pled that a director has been close friends with an interested party for a half century, the plaintiff has pled facts quite different from those at issue in *Beam*.[23] Close friendships of that duration are likely considered precious by many people, and are rare. People drift apart for many reasons, and when a close relationship endures for that long, a pleading stage inference arises that it is important to the parties.

The plaintiffs did not rely simply on that proposition, however. They pled facts regarding the economic relations of Jackson and Chairman Sanchez that buttress their contention that they are confidantes and that there is a reasonable doubt that Jackson can act impartially in a matter of economic importance to Sanchez personally. It may be that it is entirely coincidental that Jackson's full-time job is as an executive at a subsidiary of a corporation over which Chairman Sanchez has substantial influence, as the largest stockholder, director, and the Chairman of an important source of brokerage work. It may be that it is also coincidental that Jackson's brother also works there. It may be coincidental that Jackson and his brother both work on insurance brokerage work for the Sanchez Public and Private Companies there. And it may be coincidental that Jackson finds himself a director of the Sanchez Public Company. But rather certainly, there arises a pleading stage inference that Jackson's economic positions derive in large measure from his 50-year close friendship with Chairman Sanchez, and that he is in these positions

---

[23] *See id.* at 1050 (quoting *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 979 (Del. Ch. 2003)) (noting that the relationship between directors here did not rise to the level of "familial loyalty and closeness, [which] may raise a reasonable doubt whether a director can appropriately consider demand").

because Sanchez trusts, cares for, and respects him.[24]  If that is true, there is of course nothing wrong with that.  Human relationships of that kind are valuable.  In this context, however, where the question is whether the plaintiffs have met their pleading burden to plead facts suggesting that Jackson cannot act independently of Chairman Sanchez, these obvious inferences that arise from the pled facts require that the defendants' motion to dismiss be denied.[25]  In other words, using the precise parlance of *Aronson*, the plaintiffs

---

[24] On a motion to dismiss in *Harbor Financial Partners v. Huizenga*, the defendants argued that the brother-in-law of the CEO and Chairman should be deemed to be an independent director because the plaintiffs had not pled facts that the brothers-in-law were in fact loving family members. *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 886–87 (Del. Ch. 1999).  The Court of Chancery rejected that argument for two reasons.  First, it noted that there was not only a familial relationship between the CEO and the brother-in-law, but a business one, and that the fact that the brother-in-law was on not just the board of the company that was the focus of the litigation, but others controlled by the CEO, supported a pleading stage inference that the two were in fact close.  *Id.* at 889.  In so ruling, the Court noted that it remained the rule that plaintiffs were entitled to have reasonable inferences drawn in their favor from the pled facts. *Id.*  Second, the Court of Chancery noted that there were limits to the extent to which a plaintiff could use books and records to explore such a relationship between a director and an interested party before filing: "In this regard, one wonders how a plaintiff could use tools such as 8 *Del. C.* § 220 or public filings to generate such facts."  *Id.* at 889 n.32.

[25] The Court of Chancery decided that the plaintiffs had not compromised Jackson's independence because they had not pled facts showing that Chairman Sanchez had the unilateral power to cause Jackson's termination as an executive at IBC because Chairman Sanchez was only one of nine directors at the parent company and the plaintiffs did not plead precisely how much of the stock of IBC Chairman Sanchez and his family controlled.  *In re Sanchez Energy*, 2014 WL 6673895, at *6.  Although it is true that the plaintiffs did not plead the percentage of IBC shares the Sanchez family owned, the plaintiffs i) pled that Chairman Sanchez was the "largest stockholder" of IBC; ii) pled that Chairman Sanchez had been a non-independent director of IBC; and iii) cited to a proxy statement that acknowledged Chairman Sanchez's interest in IBC by noting that he was not an independent director "as defined in the applicable NASDAQ Marketplace Rules," which define a non-independent director as someone "having a relationship which, in the opinion of the Company's board of directors, would interfere with the exercise of independent judgment in carrying out the responsibilities of a director."  Complaint ¶¶ 23, 75(a) n.13; App. to Answering Br. at 180 (International Bancshares Corporation Proxy Statement, Apr. 19, 2013); NASDAQ Marketplace Rule 5605(a)(2).  The plaintiffs also pled that "[i]f Jackson . . . were to act against the interests of Sanchez Jr., he faces the threat of termination at IBC, the loss of promotion opportunities, and the loss or decrease of his salary – his very livelihood – because of Sanchez Jr.'s position on IBC's board and significant influence through

9

pled particularized facts, that when considered in the plaintiff-friendly manner required, create a reasonable doubt about Jackson's independence.

As to this point, we also think it useful to note that although, like the Court of Chancery, we agree that it would have been ideal for the plaintiffs to use the books and records tool,[26] as our prior cases have encouraged, that instrument may have been of limited utility on this particular point. It may be that the Sanchez Public Company has a file of the disclosure questionnaires for the board that would provide more detail about the thickness of the relationship between Chairman Sanchez and Jackson.[27] But we

---

his substantial equity stake." Complaint ¶ 75(a). One natural inference from these pled facts is that Chairman Sanchez is very influential at IBC as a whole, including its wholly owned subsidiary. And the fact that "both Jackson and his brother received a portion of the commissions paid to IBC by [Sanchez Energy] and its affiliates," and that their employment is their primary source of income, is pled. *Id.* A lack of independence does not turn on whether the interested party can directly fire a director from his day job. It turns on, at the pleading stage, whether the plaintiffs have pled facts from which the director's ability to act impartially on a matter important to the interested party can be doubted because that director may feel either subject to the interested party's dominion or beholden to that interested party. At the very least, the pled facts suggest an inference that Jackson might feel strongly beholden to Chairman Sanchez as the source of his primary job, and that of his brother. In this regard, we note that the plaintiffs have made it more difficult for themselves and the Court of Chancery than necessary. In an article the plaintiffs submitted on appeal but did not include in the complaint, the fact emerges that Chairman Sanchez's father founded IBC in 1966. Jan Reid, *Tony Sanchez's New Deal*, TEX. MONTHLY, Nov. 2001, *available at* http://www.texasmonthly.com/politics/tony-sanchezs-new-deal/. This is a fact we do not need to rely upon, but which if it had been pled would have likely had importance to the Court of Chancery. Because it was not pled, the Court of Chancery, like us, had no chance to give it weight. Likewise, the proxy the plaintiffs incorporated for other purposes in the complaint shows that Chairman Sanchez controls over 14% of IBC's voting power. App. to Answering Br. at 206–07 (International Bancshares Corporation Proxy Statement, Apr. 19, 2013). But they did not cite the proxy for this purpose, thus complicating the Court of Chancery's already difficult task by failing to identify Chairman Sanchez's voting power in the complaint when it was easy for them to do so.

[26] 8 *Del. C.* § 220(b).

[27] Sanchez Energy Corporation is a company listed on the New York Stock Exchange. Given that, the board was required to make a determination each year of who was an independent director for purposes of the relevant exchange rule. *See* NYSE Corporate Governance Rule 303A.02(a)(ii). Therefore, it would be good governance practice for the board and its counsel to

10

cannot hold the plaintiffs' failure to undertake additional investigation against them when, as here, the facts pled in the complaint support an inference that a majority of the board lacked independence.[28]

Because we conclude that the plaintiffs pled demand excusal under the first prong of *Aronson*, we need not and therefore do not reach the other issues presented on appeal. Therefore, the judgment of the Court of Chancery of November 25, 2014 dismissing this case is reversed, and this case is remanded for further proceedings consistent with this opinion.

---

have had a process whereby annual disclosures and discussions bearing on qualification as an independent director were had. *See, e.g.*, *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, __ A.3d __, 2015 WL 4237352, at *12 (Del. Ch. July 13, 2015). This is not to minimize the utility of the books and record tool more generally, but to note that its usefulness in getting at the personal relationships between board members will depend on how intensively the board itself examines those issues.

[28] *See White v. Panic*, 783 A.2d 543, 549–50 (Del. 2001) (footnote omitted) ("[A] perceived deficiency in the plaintiff's pre-suit investigation would not permit the Court of Chancery, or this Court on appeal, to limit its reading of the complaint or to deny the plaintiff the benefit of reasonable inferences from well-pleaded factual allegations. If the plaintiff fails to undertake appropriate investigation before filing suit, the plaintiff will simply have fewer 'particularized facts' from which the court may draw reasonable inferences.").