VALIHURA, Justice,
dissenting:
In a thoughtful forty-two page opinion, the Chancellor determined that the plaintiff had failed to demonstrate that demand would have been futile with respect to the claims in the Complaint. For the reasons set forth herein, I would affirm his well-reasoned decision.
This is a close case, and the plaintiff did not aid his cause in failing to direct a books and records request to the issues bearing on the board’s independence.[1] De *135 mand futility required the plaintiff to demonstrate that five of the nine directors were interested or lacked independence. In my view, the Court of Chancery correctly determined that directors Katzenberg, Meresman, Gordon, and Doerr were independent. Plaintiff raises no challenge in this Court as to the independence of directors Katzenberg and Meresman.[2] Although the trial court did not separately analyze director Paul, it did state in a footnote that it “would reach the same conclusion regarding Paul, who did not participate in the Secondary Offering or even vote to approve it.”[3] Because I would conclude that directors Katzenberg, Meresman, Gordon, Doerr, Siminoff, and Paul were independent, I would affirm the Court of Chancery’s determination that the plaintiff’s complaint failed to create a reasonable doubt that at least five of the nine directors were disinterested or independent for pleading stage purposes.
The plaintiffs arguments as to Gordon and Doerr’s alleged lack of independence arise from their positions as partners at Kleiner Perkins Caufield & Byers (“Klein-er Perkins”). The plaintiff alleged that Kleiner Perkins has (i) invested alongside Hoffman in a company co-founded by Pincus’s wife; (ii) invested in. a company of which Hoffman is a director; and (iii) completed two financings with Hoffman’s venture capital firm.[4] As the Court of Chancery recognized, the plaintiff failed to plead any facts about the size, profits, or materiality to Gordon and Doerr of these investments or interests. Absent more, the relationships among these venture capitalists and entrepreneurs, as alleged, are not sufficient to raise a reasonable doubt as to Gordon and Doerr’s independence. Thus, I agree with the Chancellor’s view that their relationships and- overlapping investments do not rise to the level of creating a reasonable doubt as to their independénce.
As to Gordon’s and Doerr’s designation as “not independent” under the NASDAQ rules, the Court of Chancery correctly observed that independence under the NASDAQ rules is relevant to our analysis here but not dispositive.[5] The plaintiff candidly acknowledged that he failed to allege why Gordon and Doerr lack independence under NASDAQ rules.[6] As the trial court *136 observed, “neither the proxy statement nor the plaintiff specifies the reason for this[,]”[7] and so it is not clear whether Gordon and Doerr’s “non-independent” designation was due to a relationship with Zynga, Pincus, or another executive. It is not difficult to come up with a scenario where a director might be deemed “not independent” under the NASDAQ rules, or NYSE rules, yet deemed independent for demand futility purposes.[8] A request pursuant to 8 Del. C. § 220 should have been targeted to this point, as plaintiff concedes.[9]
In the demand futility context, directors are presumed independent,[10] and it is the plaintiffs burden to plead facts “with particularity” showing that a demand on the board would have been futile.[11] Given this burden of proof, the presumption of independence, and the lack of any explanation as to why Gordon and Doerr were identified as “not independent” for NASDAQ purposes, I do not believe that plaintiffs are entitled to an inference that Gordon and Doerr lack independence for purposes of the fact-specific demand futility determination here. This is particularly true given that the allegations concerning Gordon and Doerr’s interlocking business relationships fall short of suggesting that they are of a “bias-producing” nature.
As to director Paul, the plaintiff argues that Paul lacked independence from Pincus because they co-founded a company over twenty years ago and Pincus serves in an advisory role and is an investor in Paul’s company, SideCar.[12] There are no allegations that demonstrate the materiality or magnitude of the present business relationship, which the plaintiff conceded could have been “[s]omewhere between 10 cents and $10 billion.”[13] He also did not dispute the trial court’s statement that the company Paul and Pincus co-founded was sold approximately 15 years ago.[14] Thus, based upon my review of the record,[15] I would *137 conclude that these allegations are insufficient to plead a lack of independence.
Although I would not need to reach issues concerning Siminoffs independence had my view prevailed, I believe that a few points are worth making. The sum total of the allegations as to Siminoffs alleged lack of independence appear in paragraph 117(h) of the Complaint, which states that “Siminoff and her husband have an existing business relationship with defendant Pincus as co-owners of a private airplane and, therefore, Siminoff would not initiate litigation against her business partner defendant Pincus as it would substantially and irreparably harm, their ongoing business relationship.”[16]
Before the trial court, both parties referred to statements in Zynga’s public filings with the Securities and Exchange Commission, although the Complaint did not expressly incorporate these statements by reference.[17] In briefing on the defendants’ motion to dismiss or stay, the defendants attached a proxy statement in which Zynga disclosed the “relationship between Ms. •Siminoff and ¡her spouse and Mr. Pincus, who co-own a small private airplane, which was not used for Company travel.”[18] The Chancellor also acknowledged an unsupported reference in the plaintiffs brief describing Siminoff as a “close personal friend” of Pincus. At oral argument on the defendants’ motion to dismiss, the Chancellor offered counsel for Sandys an opportunity to expand on the nature of the relationship, but counsel was unable to do so.[19]
Given the plaintiffs failure to allege any specific facts as to the materiality of the co-owned asset (apparently a small plane, not a jet),[20] whether there were other owners, or the nature of the Siminoff/Pincus relationship,[21] I am sympathetic to the Chancellor’s view that “Plaintiffs allegations concerning co-ownership of an asset and friendship do not reveal a sufficiently *138 deep personal connection to Pincus so as to raise a reasonable doubt about Simi-noff s independence from Pincus.”[22] Given the plaintiffs burden, the Chancellor’s decision to err on the dismissal side of this fault line is not unreasonable.
The Majority states that “the most likely inference” to draw from co-ownership of the small plane is “not that the private airplane was a business venture” but that there was “an extremely close, personal bond between Pincus and Siminoff’ and that “the Pincus and Siminoff families are extremely close to each other and are among each other’s most important and intimate friends.”[23]1 respectfully disagree given that the plaintiff has chosen to plead only a business relationship. Nothing more is alleged, let alone facts suggesting that kind of familial loyalty and intimate friendship.
To render a director unable to consider demand, a relationship must be of a “bias-producing nature.” [24] In Beam, this Court reaffirmed that a reasonable inference cannot be made that a particular friendship raises a reasonable doubt “without specific factual allegations to support such a conclusion.”[25] In Beam, this Court affirmed dismissal of a complaint that had pled that certain directors were a “longtime personal friend,” a “longstanding friend[,]” and had a “longstanding personal relationship with defendant Stewart.”[26] Given this plaintiffs decision to allege the existence of a business relationship only, he is left to argue that co-ownership of a small airplane is simply the kind of fact that, in and of itself, creates a reasonable doubt as to Siminoff s independence from Pincus. This is a close call. Although it may be reasonable to infer some kind of collaborative relationship given the nature of the asset, I do not believe the bare allegation in the Complaint rises to the level of creating a reasonable doubt as to Siminoff s ability to carry out her fiduciary duties, to properly consider a demand, and to put at risk her reputation by disregarding her duties.
Thus, this case stands in contrast to Sanchez,[27] for example, where the plaintiff pled that the director had a fifty-year friendship with the interested party, that the director’s primary employment (and that of his brother) was as an executive of a company over which the interested party had substantial influence, and the director made thirty to forty percent of his annual income from his directorship.[28] Here, the bare reference to a “close friendship” appears only as an unsupported assertion in a brief.[29] This unsupported and unverified reference should not be considered and should not serve as a basis upon which to draw any inferences. For me, this is not a mere technicality. Court of Chancery Rule 3(aa) requires that all complaints “be verified.”[30] This means that every pleading *139 “shall be under oath or affirmation by the party filing such pleading that the matter contained therein insofar as it concerns the party’s act and deed is true, and so far as relates to the act and deed of any other person, is believed by the party to be true.”[31] Unverified and unsupported statements in a brief should not be considered as if they were pleaded facts.
In Sanchez, we warned that, “[i]t is not fair to the defendants, to the Court of Chancery, or to this Court, nor is it proper under the rules of either court, for the plaintiffs to put facts outside the complaint before us.”[32] We further cautioned that “this approach hazards dismissal with prejudice on the basis of a record the plaintiffs had the fair chance to shape and that omitted facts they could have, but failed to, plead.”[33] Here, the plaintiff failed to heed that warning and unnecessarily complicated the task of both courts in exercising their best efforts to reach a just result.[34] Even assuming that our law cannot “ignore the social nature of humans[,]”[35] there is no equity here in asking the reviewing courts to speculate that the pleaded Siminoff/Pincus business relationship is of such a nature to render her beholden to him or so under his influence that her directorial discretion is sterilized.
Accordingly, because I would affirm the Court of Chancery’s decision, I respectfully dissent.

. To his credit, his counsel was candid about this at oral argument before this Court. See Oral Argument at 5:23, Sandys v. Pincus, No. 157, 2016 (Del. Oct. 19, 2016) [hereinafter "Oral Argument”], https://livestream.com/ DelawareSupremeCourt/events/6511893/ videos/139287026 ("Your Honor, at the time we started the process, a majority of the board had been sellers in the Secondary Offering, so it didn’t seem quite as critical at that point in time. I guess with the benefit of *135 hindsight if I had to do it again we would have sought that.”).

. The Verified Shareholder Derivative Complaint (the "Complaint”) contains no allegations regarding Katzenberg’s relationship with Hoffman or Pincus. The Complaint’s only allegation regarding Meresman's independence is that both he and Hoffman serve on Linkedln's board, Verified S'holder Derivative Compl. at A71 II 117(i), Sandys v. Pincus (Del. Ch. Apr. 4, 2014) [hereinafter "Compl. at A_”], available at A12-78. Directors Simi-noff and Doerr joined the Board after the events at issue in this action and are not named as defendants; and directors Gordon, Katzenberg, Meresman, and Paul are outside directors who were on the Board during the events at issue, but did not sell any stock in the Secondary Offering.

. Sandys v. Pincus, 2016 WL 769999, at *14 n.70 (Del. Ch. Feb, 29, 2016).

. Compl. at A20 ¶¶ 17-18, A68 ¶¶ 114(c), (f), A71 ¶ 117(g), A72 ¶¶ 117(j-k). The Chancellor appropriately declined to consider other information regarding certain officers' investments in Kleiner Perkins funds. The plaintiff had raised this information in briefing and in an affidavit containing an excerpt from a public filing that was not incorporated by reference into or attached to the Complaint,

. See, e.g., In re MFW S’holders Litig., 67 A.3d 496, 510 (Del. Ch. 2013) ("[T]he fact that directors qualify as independent under the NYSE rules does not mean that they are necessarily independent under our law in particular circumstances.” (citing In re Oracle Corp. Derivative Litig., 824 A.2d 917, 941 n.62 (Del. Ch. 2003))), aff'd, 88 A.3d 635 (Del. 2014).

.See Oral Argument at 12:13.

. Sandys, 2016 WL 769999, at *9.

. See, e.g., Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera, 119 A.3d 44, 61 (Del. Ch. 2015) (comparing the bright-line test for independence set forth in the NYSE rules with the "case-by-case fact specific inquiry based on well-pled factual allegations” required by Delaware law). In Baiera, the Court of Chancery concluded that, "[g]iven the peculiarities of the NYSE Rules, the fact that [the director] was not designated as 'independent' under the NYSE Rules in Orbitz’s April 2013 proxy statement carries little weight.” Id. at 62. The court then found that "the factual allegations concerning [that director's] former relationship with Travelport [were] insufficient in [its] view to cast reasonable doubt on his presumed independence under Delaware law.” Id.

. See Oral Argument at 14:00 ("We alleged certain business relationships. It's true we didn't go through the 220 for that one and that was a deficiency in our process. And I guess I fall on my sword for that one.”).

. Beam v. Stewart, 845 A.2d 1040, 1048-49 (Del. 2004) ("The key principle upon which this area of our jurisprudence is based is that the directors are entitled to a presumption that they were faithful to their fiduciary duties. In the context of presuit demand, the burden is upon the plaintiff in a derivative action to overcome that presumption.” (emphasis in original) (citations omitted)).

. Del. Ch. Ct. R. 23.1; see also Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000) ("Rule 23.1 is not satisfied by conclusory statements or mere notice pleading.”).

. Compl. at A71 ¶ 117(f).

. Transcript of Oral Argument on Defs.’ Mots. to Dismiss & Stay at A410-411 (Tr. 49:23-50:6), Sandys v. Pincus, No. 9512-CB (Del. Ch. Nov. 17, 2015), available at A3 62-435.

. Id. at A410 (Tr. 49:19-22).

. Beam, 845 A.2d at 1048 (“This Court reviews de novo a decision of the Court of Chancery to dismiss a derivative suit under Rule 23.1 [,]'' and "[t]he scope of this Court’s *137 review is plenary.” (italics added) (citations omitted)).

. Compl. at A71 ¶ 117(h) (emphasis added).

. E.g., Zynga Inc., Definitive Proxy Statement (Form 14A) (Apr. 25, 2013), excerpt available at B210-21; Zynga Inc., Prospectus (Mar. 29, 2012), excerpt available at B125-60.

. Zynga Inc., Definitive Proxy Statement (Form 14A), at 1 (Apr. 25, 2013), excerpt available at B210-21.

. Transcript of Oral Argument on Defs.’ Mots, to Dismiss & Stay at A410 (Tr. 49:7-16).

. Zynga Inc., Definitive Proxy Statement (Form 14A), at 1 (Apr. 25, 2013), excerpt available at B210-21. Plaintiff's counsel referred to the plane as a "jet” during argument before this Court. See Oral Argument at 42:35 (“Your Honor I know you faulted Plaintiff for not doing a more complete books and records, but in the context of this case Defendants placed into the record many of the facts in the form of a proxy statement and a registration statement. And in the argument down below I did invite the Chancellor to look at all the facts in the registration statement and the proxy and both sides cited to those facts. So— that it’s a plane or a jet, the fact that it is a jet is properly before the Court just based upon the Defendants putting that document before the Court, to the extent there is a difference between a plane and a jet.”). The proxy statement does not refer to the plane as a "jet,” as the Majority acknowledges. See Majority Op. at 129 n.18. At oral argument, when asked whether the plane is a $40,000 Piper Cub or a $40 million Gulfstream jet, counsel for plaintiff merely responded that he never considered that the plane could be a smaller plane "given the positions of these individuals” and that he thought "it’s reasonable to infer that a private plane is a relatively weighty purchase and a weighty investment.” Oral Argument at 10:00.

.See Compl. at A71 ¶ 117(h).

. Sandys, 2016 WL 769999, at *8.

. Majority Op. at 129-30 (emphasis added).

. Beam, 845 A.2d at 1050,

. Id. (quoting Beam v. Stewart, 833 A.2d 961, 979 (Del. Ch. 2003)) (internal quotation marks omitted).

. Id. at 1045-47.

. Del. Cnty. Emps. Ret. Fund v. Sanchez, 124 A.3d 1017 (Del. 2015).

. Id. at 1020-21.

. Brief of PI. in Opp’n to Defs.' Mots, to Stay or Dismiss at A145, Sandys v. Pincus, No. 9512-CB (Del. Ch. Apr. 17, 2015), available at A82-150.

. Del. Ct. Ch. R. 3(aa).

. Id.

. Sanchez, 124 A.3d at 1021 n.14.

. Id.

. Finally, regarding the Majority’s repeated suggestions (both in its Opinion and at oral argument) that plaintiffs should search the internet for facts in fashioning a complaint, see, e.g., Oral Argument at 6:05, 14:00, 21:10, although perhaps useful on some level, internet searches likely are not, in most cases, an adequate substitute for demands made pursuant to 8 Del. C. § 220—particularly in terms of the reliability and trustworthiness of information discovered. Of course, a court cannot engage in independent fact-finding, on the internet or otherwise, and the Majority is correct that the Court of Chancery was stuck with the limited factual allegations made by the plaintiff—and so is this Court. The Majority suggests that, had the plaintiff undertaken an internet search, "he likely would have discovered more information about Siminoff’s relationship with Pincus," Majority Op. at 130; see also Oral Argument at 21:30. But the Majority never identifies what information likely would have been discovered. Whatever it may be, it can have no bearing on our disposition since the record on appeal before us consists of "the original papers and exhibits” only. Del, Sup. Ct. R. 9(a); see Tribbitt v. Tribbitt, 963 A.2d 1128, 1131 (Del. 2008) (observing that, "while a judge may take judicial notice of a fact outside the record, that fact must not be subject to reasonable dispute and the parties must be given prior notice and an opportunity to challenge judicial notice of that fact” (citations omitted)); Barks v. Herzberg, 206 A.2d 507, 509 (Del. 1965); Del. R. Evid. 201(e) ("A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.”).

. Oracle, 824 A.2d at 938.