**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PARK EMPLOYEES' AND RETIREMENT BOARD EMPLOYEES' ANNUITY AND BENEFIT FUND OF CHICAGO, derivatively and on behalf of Bioscrip, Inc., | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 11000-VCG |
| RICHARD M. SMITH, MYRON Z. HOLUBIAK, CHARLOTTE W. COLLINS, SAMUEL P. FRIEDER, DAVID R. HUBERS, RICHARD L. ROBBINS, STUART A. SAMUELS, GORDON H. WOODWARD, KIMBERLEE C. SEAH, HAI V. TRAN, PATRICIA BOGUSZ, KOHLBERG & CO., L.L.C., KOHLBERG MANAGEMENT V, L.L.C., KOHLBERG INVESTORS V, L.P., KOHLBERG PARTNERS, V, L.P., KOHLBERG TE INVESTORS V, L.P., KOCO INVESTORS V, L.P., and JEFFERIES LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| BIOSCRIP, INC., | ) ) | |
| Nominal Defendant. | ) | |

**MEMORANDUM OPINION**

Date Submitted: January 19, 2017
Date Decided: April 18, 2017

Pamela S. Tikellis, A. Zachary Naylor, and Vera G. Belger, of CHIMICLES & TIKELLIS LLP, Wilmington, Delaware; OF COUNSEL: Catherine Pratsinakis, of CHIMICLES & TIKELLIS LLP, Haverford, PA; Carol V. Gilden, of COHEN MILSTEIN SELLERS & TOLL PLLC, Chicago, Illinois; Richard A. Speirs and Kenneth Rehns, of COHEN MILSTEIN SELLERS & TOLL PLLC, New York, New York, *Attorneys for Plaintiff Park Employees' and Retirement Board Employees' Annuity and Benefit Fund of Chicago*.

Stephen P. Lamb and Matthew D. Stachel, of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, Delaware; OF COUNSEL: Leslie Gordon Fagen, Daniel J. Kramer, and Robert N. Kravitz, of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, *Attorneys for Defendants Kohlberg & Co., L.L.C., Kohlberg Management V, L.L.C., Kohlberg Investors V, L.P., Kohlberg Partners V, L.P., Kohlberg TE Investors V, L.P., and KOCO Investors V, L.P.*

David C. McBride, Martin S. Lessner, Tammy L. Mercer, and Nicholas J. Rohrer, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Jonathan Rosenberg and William J. Sushon, of O'MELVENY & MYERS LLP, New York, New York, *Attorneys for Defendant Jefferies LLC*.

Gregory P. Williams, Brock E. Czeschin, and Sarah A. Clark, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Jay Lefkowitz, P.C., Joseph Serino, Jr., P.C., and Shireen A. Barday, of KIRKLAND & ELLIS LLP, New York, New York, *Attorneys for Nominal Defendant BioScrip, Inc. and Defendants Richard M. Smith, Myron Z. Holubiak, Charlotte W. Collins, Samuel P. Frieder, David R. Hubers, Richard L. Robbins, Stuart A. Samuels, Gordon H. Woodward, Kimberlee C. Seah, Hai V. Tran, and Patricia Bogusz.*

GLASSCOCK, Vice Chancellor

I am in the unusual position here of issuing a second decision granting a motion to dismiss in a single matter. Court of Chancery Rule 15(aaa) is designed to prevent such a situation. Here, under the good-cause rationale of Rule 15(aaa), I granted the Defendants' first motions to dismiss, but allowed the Plaintiff to amend its complaint.

The case involves the alleged receipt of illegal kickbacks by the Nominal Defendant, BioScrip, Inc., in connection with sales of a drug, Exjade. The complaint alleges that the then-Board of Directors and other BioScrip fiduciaries failed to properly oversee the company, allowing this illegal activity to exist, leading to damages to BioScrip. The Plaintiff, a BioScrip stockholder, seeks to hold these fiduciaries liable to the company, via this derivative litigation.

The first incarnation of the Plaintiff's Complaint (the "Original Complaint") sought to excuse demand and justify this derivative proceeding on the not-unusual allegation that the directors could not exercise their business judgment with respect to a demand, because of a substantial likelihood that they themselves would be found liable in the matter. Because, under the unusual facts here, I found that it was clear at the time the Original Complaint was filed that the composition of the Board would have changed before such a demand could be considered, I found that the operative board for demand analysis was not composed of the directors named in the Original Complaint. Instead, the operative Board consisted largely of new directors, seated

1

on May 11, 2015 (the "May 11 Board"). The Original Complaint did not address the ability of the May 11 Board to consider a demand. Therefore, I dismissed, but with leave to refile if the Plaintiff considered the May 11 Board also incapable of addressing a demand to litigate. The Plaintiff did so, and the Defendants filed new Motions to Dismiss, addressed in this Memorandum Opinion.

A complaint may proceed derivatively on behalf of a corporation without demand first being made upon the board of directors, but only upon a showing that such demand should be excused as futile. The Plaintiff here has failed to plead facts that, if true, raise a reasonable doubt that the May 11 Board is capable of applying its business judgment to a demand that such litigation on behalf of BioScrip proceed; accordingly, demand is not excused, and the Motions to Dismiss are granted. My reasoning follows.

## I. BACKGROUND[1]

This matter may proceed derivatively only if the Plaintiff can demonstrate that a demand on the Board of Directors is excused. The suit was filed when Board membership was in a state of flux, raising the question of whether the outgoing or incoming directors were the fiduciaries against whom demand futility must be measured. I issued a Memorandum Opinion in this matter on May 31, 2016

---

[1] For purposes of evaluating the Defendants' Motions to Dismiss, the facts are drawn from the well-pled allegations of Plaintiff's Verified Amended Stockholder Derivative Complaint (the "Amended Complaint" or "Am. Compl."), and all documents incorporated by reference therein.

2

addressing that question ("*Park Emps' I*").[2] I found that, contrary to the Plaintiff's argument, the proper Board against which to make demand was the Board of Directors as constituted on May 11, 2015.[3] Due to the unique facts of the matter and because the Original Complaint as pled—focusing on the composition of the Board on May 7, 2015—was insufficient to support a finding of demand futility, I also found it appropriate to allow the Plaintiff an opportunity to move to amend its complaint, under the good cause exception to Court of Chancery Rule 15(aaa).[4] The Plaintiff did so, amending its complaint and alleging that demand would be futile as to the May 11 Board. The Defendants have moved to dismiss the Amended Complaint under Rule 23.1 and Rule 12(b)(6). The following factual recitation is sufficient to evaluate Defendants' motions pursuant to Rule 23.1 as they relate to the May 11 Board.[5] Interested parties are referred to the more detailed statement of facts in *Park Emps' I*.

*A. The Parties*

The Plaintiff is a stockholder of BioScrip, Inc. and has been a stockholder at all relevant times.[6] The Plaintiff purports to bring this action derivatively on behalf

---

[2] *Park Emps.' & Ret. Bd. Emps.' Annuity & Benefit Fund of Chicago v. Smith*, 2016 WL 3223395 (Del. Ch. May 31, 2016).

[3] *Id.* at *3.

[4] *Id.* at *2–3.

[5] Given my decision below, I need not address Defendants' motions under Rule 12(b)(6).

[6] Motion for Leave to File an Amended Complaint, Ex. A (the "Amended Complaint or "Am. Compl.") ¶ 22. *See also* Order (Sept. 20, 2016) (Dkt. No. 98) (granting Motion for Leave to File an Amended Complaint).

of BioScrip, Inc. Nominal Defendant BioScrip, Inc. ("BioScrip") is a Delaware corporation that provides infusion services, home health services, and pharmacy benefit management ("PBM") services nationwide.[7]

Defendant Smith has been the President and CEO of BioScrip since 2011 and previously worked as the COO starting in 2009.[8] Smith has also served on the Board since 2009.[9] Defendant Holubiak served as a director from 2005 until June 1, 2016.[10] Starting in 2005, Holubiak served on the Audit Committee, the Management Development and Compensation Committee (the "Compensation Committee"), and the Corporate Strategy Committee.[11] Beginning in 2013, Holubiak also served on the Governance, Compliance and Nominating Committee (the "Governance Committee").[12]

Defendants David R. Hubers, Charlotte W. Collins, Stuart A. Samuels, Samuel P. Frieder, and Gordon H. Woodward all left the BioScrip Board on May 11, 2015, but were directors at all times relevant to any liability (collectively with Smith and Holubiak, the "Director Defendants").[13] Defendants Patricia Bogusz, Hai V. Tran, and Kimberlee C. Seah were BioScrip officers at all relevant times (the

---

[7] Am. Compl. ¶¶ 1, 23.
[8] *Id.* at ¶ 24.
[9] *Id.*
[10] *Id.* at ¶ 25.
[11] *Id.*
[12] *Id.*
[13] *See id.* at ¶¶ 26–30.

"Officer Defendants" and collectively with the Director Defendants, the "Individual Defendants").[14]

Defendants Kohlberg & Co., L.L.C., Kohlberg Management V, L.L.C., Kohlberg Investors V, L.P., Kohlberg Partners V, L.P., Kohlberg TE Investors V, L.P. and KOCO Investors V., L.P. (collectively, "Kohlberg") consist of various Delaware LLCs and partnerships.[15] Before the stock offerings at issue in this matter, Kohlberg beneficially owned approximately 26.2% of BioScrip's outstanding shares. Kohlberg also held the right to appoint two directors to the BioScrip Board and accordingly designated two of its senior executive officers—Frieder and Woodward—to the Board.[16]

Defendant Jefferies LLC ("Jefferies") is a global investment banking firm and a Delaware LLC.[17] BioScrip hired Jefferies to advise it in connection with a shelf-registration "leading up to the April 2013 Offering in which [BioScrip] and Kohlberg sold [BioScrip securities and] the August 2013 Offering in which Kohlberg (by and through its Board designees, Frieder and Woodward) sold" BioScrip securities.[18] Jefferies also was to advise BioScrip in connection with BioScrip's possible sale of its PBM business segment and possibly the entire company.[19] Additionally, Jefferies

---

[14] *Id.* at ¶¶ 31–33.
[15] *Id.* at ¶ 34.
[16] *Id.*
[17] *Id.* at ¶ 35.
[18] *See id.*
[19] *Id.*

5

"served as underwriter for the April 2013 Offering."[20]

*B. Relevant Non-parties*

Christopher S. Shackelton is the co-founder and managing partner of Coliseum Capital Management, LLC ("Coliseum").[21] On March 9, 2015, in connection with a securities purchase agreement with Coliseum, Shackelton was appointed to the BioScrip Board and currently serves as a member of the Board's Audit and Compensation Committees.[22] Shackelton "also has a significant business relationship with BioScrip."[23] Since November 16, 2012, Shackelton has been a member of the board of directors of LHC Group, Inc. ("LHC"), of which Coliseum—the LLC that Shackelton founded—owns 23%.[24] LHC purchased two BioScrip operating subsidiaries in April 2014 that together brought in approximately $72.6 million in revenues in the year prior to their sale.[25] Additionally, Jefferies "is a longtime advisor to LHC" and served as an underwriter on LHC's initial public offering as well as its second stock offering.[26] LHC also "presented at Jefferies' 2016 Annual Healthcare Conference."[27]

---

[20] *Id.*
[21] *Id.* at ¶ 36.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*

R. Carter Pate has served on the Board since May 11, 2015.[28]  Upon Holubiak's resignation on June 1, 2016, Pate took over as Chairman of the Board.[29] Pate is also Chairman of the Audit Committee and a member of the Compensation Committee.[30]  Pate was the "Global and U.S. Managing Partner of the Healthcare Practice at PriceWaterhouse Coopers ('PWC')" from 2007 until 2010.[31]  It was during this time that, "while under Pate's management, PWC audited Novartis' financial statements and internal controls."[32]

Michael Goldstein has served as a member of the Board since May 11, 2015.[33] Goldstein currently chairs the Governance Committee and is a member of the Audit Committee.[34]  Goldstein "has been an advisor to Jefferies & Company Inc. (an affiliate of Jefferies Group LLC) since 2011."[35]  An April 16, 2012 press release named Goldstein to the first "six distinguished members" of the "Global Senior Advisory Board" of Jefferies Group Inc.—the predecessor to Jefferies Group LLC.[36] This advisory board was established by Richard B. Handler, who is the Chairman and CEO of Jefferies Group LLC, which is the parent of Jefferies.  An additional

---

[28] *Id.* at ¶ 41.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*  "PWC audited Novartis financial statements and its internal controls from at least 2001 to 2013."  *Id.*
[33] *Id.* at ¶ 43.
[34] *Id.* at ¶¶ 25, 43.
[35] *Id.* at ¶ 43.
[36] *Id.*

press release issued in September 2012 "continued to tout Goldstein as a member of the 'distinguished group'" of the Global Senior Advisory Board.[37]

Tricia Nguyen has been a director of the Board since 2014 and currently serves on the Governance Committee.[38] David W. Golding has served as a director on the Board since May 11, 2015.[39] Golding currently chairs the Compensation Committee and serves on the Governance Committee.[40] Golding was originally nominated to the Board in February 2015 "as a result of an Investor Agreement with Cloud Gate Capital, LLC and DSC Advisors LLC, which at the time owned approximately 7% of [BioScrip's] common stock."[41]

*C. Facts Leading to this Litigation*

This matter centers around three areas of alleged misconduct: "(1) a kickback scheme related to the Company's sale of a drug called Exjade (the 'Exjade Kickback Scheme'); (2) the Individual Defendants' fraudulent concealment of the quick and significant erosion of BioScrip's pharmacy benefit management services segment; and (3) insider trading in connection with two stock offerings in 2013."[42] The intricacies of these areas of alleged misconduct are explored in further detail in *Park*

---

[37] *Id.*
[38] *Id.* at ¶ 37.
[39] *Id.* at ¶ 42.
[40] *Id.*
[41] *Id.*
[42] *Park Emps.' I*, 2016 WL 3223395, at *3.

*Emps' I.*[43]  A brief review of the Exjade Kickback Scheme is warranted, however.

In November 2005, Novartis Pharmaceuticals Corporation ("Novartis") chose "BioScrip and two others pharmacies to be exclusively responsible for processing and filling almost all Exjade prescriptions."[44]  BioScrip received a rebate from Novartis of $13 per Exjade shipment.[45]  This rebate was not illegal.[46]  In 2007, BioScrip's Exjade sales decreased due to increased recognition of the drug's negative side effects.[47]  Novartis then used "threats and substantial financial kickbacks to incentivize BioScrip's management" to recommend Exjade refills.[48]  By late 2007, BioScrip's refill rates were among the highest of its peers and in early 2008, Novartis raised BioScrip's per shipment rebate from $13 to $20, allegedly constituting an illegal kickback.[49]  By the end of 2008, Novartis would again increase this rebate to $30.[50]  BioScrip eventually sold the division involved in this scheme in approximately May 2012 but retained any liabilities arising from the division.[51]

*D. Procedural History*

In response to my holding in *Park Emps I*, the Plaintiff filed its Motion for

---

[43] *Park Emps.' I*, 2016 WL 3223395.
[44] Am. Compl. ¶ 71.
[45] *Id.* at ¶ 74.
[46] *Id.*
[47] *See id.* at ¶ 75.
[48] *Id.* at ¶ 77.
[49] *Id.* at ¶ 80.
[50] *Id.*
[51] *Id.* at ¶ 85.

9

Leave to File an Amended Stockholder Derivative Complaint on June 30, 2016 (the "Motion to Amend") and attached the Amended Complaint to this Motion. The Amended Complaint pleads the same counts as the Original Complaint, but adds alternative allegations that demand would be futile as to the May 11 Board instead of solely the May 7 Board.

Count I asserts a derivative *Caremark* claim against the Director Defendants, Bogusz and Seah for breach of their fiduciary duties of care and loyalty for failing to oversee BioScrip's operations and compliance.[52] Count II asserts a derivative claim against the Individual Defendants for breaching their fiduciary duties of care and loyalty in connection with alleged federal securities disclosure violations.[53] Count III asserts a derivative claim against the Director Defendants and Kohlberg for breaching their fiduciary duties of care and loyalty for causing BioScrip to engage in unlawful stock offerings in 2013.[54] Count IV asserts a derivative *Brophy* claim for insider selling against Kohlberg, Frieder, Woodward, Bogusz, Holubiak, and Hubers.[55] Counts V and VI assert derivative claims against Jefferies and Kohlberg, respectively, for aiding and abetting the breach of fiduciary duty and

---

[52] *See id.* at ¶¶ 255–267.
[53] *See id.* at ¶¶ 268–272.
[54] *See id.* at ¶¶ 273–282.
[55] *See id.* at ¶¶ 283–287.

10

insider selling claims in the other counts of the Complaint.[56] The Plaintiff seeks, among other things, an award of damages to BioScrip for injuries it sustained because of the alleged breaches of fiduciary duties and an order requiring the disgorgement of "ill-gotten gains" from the alleged insider sales transactions.[57]

The Defendants, in opposition to the Motion to Amend, argued that, pursuant to Rules 15(aaa) and 23.1, amendment of the Original Complaint would be futile, because demand on the May 11 Board was not excused. I held a teleconference on the Motion to Amend on September 13, 2016, after which I granted the Motion. However, that decision was without prejudice to the Defendants' arguments under Rule 23.1. I told the parties I would hear any arguments pursuant to Rule 12(b)(6) at the same time as I would hear arguments under Rule 23.1, presuming motions to dismiss. The Defendants so moved, and I heard argument under Rules 23.1 and 12(b)(6) on January 19, 2017. My Memorandum Opinion follows.

## II. ANALYSIS

The Defendants have moved to dismiss Plaintiff's Amended Complaint pursuant to Court of Chancery Rule 23.1, for failure to make a demand.[58] That rule acknowledges that directors, not stockholders, control the property of the

---

[56] *See id.* at ¶¶ 288–301. Count VI clarifies that it does not include a claim against Kohlberg for aiding and abetting the claims in Count IV against Defendants Bogusz, Hubers and Holubiak. *Id.* at ¶ 301.

[57] *See id.* at Prayer for Relief.

[58] As well as under Rule 12(b)(6) for failure to state a claim.

corporation, including choses-in-action. Rule 23.1 requires that a derivative plaintiff "*allege with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and *the reasons* for the plaintiff's failure to obtain the action or *for not making the effort*."[59] Where, as here, a "plaintiff forgoes demand and seeks to proceed with derivative litigation nonetheless, the action will be dismissed unless the plaintiff can demonstrate that demand is futile."[60]

This Court assesses demand futility using the standard articulated by the Delaware Supreme Court in *Rales v. Blasband*.[61] Under *Rales*, the plaintiff must allege particularized facts that create a reasonable doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand," had one been made.[62] An earlier case of the Court, *Aronson v. Lewis*,[63] addresses the same problem in the specific context of a subset of such cases: where *an action of the current Board* is the matter at issue.[64] Under *Aronson*, the plaintiff must allege particularized facts that create a reasonable doubt that "the directors are disinterested and independent" or the "challenged transaction

---

[59] Ct. Ch. R. 23.1 (emphasis added).
[60] *In re Duke Energy Corp. Derivative Litig.*, 2016 WL 4543788, at *11 (Del. Ch. Aug. 31, 2016).
[61] 634 A.2d 927 (Del. 1993).
[62] *Id.* at 934.
[63] 473 A.2d 805 (Del. 1984).
[64] *See Rales*, 634 A.2d at 933–34 (explaining that *Aronson* does *not* apply in the absence of a derivative suit challenging an actual business decision by the board of directors that would be considering the demand).

12

was otherwise the product of a valid exercise of business judgment."[65] The analyses in both *Rales* and *Aronson* drive at the same point; they seek to assess whether the individual directors of the board are capable of exercising their business judgment on behalf of the corporation.[66]

The Plaintiff here presents arguments under both the *Aronson* and the *Rales* tests. As an initial matter, the Plaintiff argues under *Aronson* that demand is futile with respect to the May 11 Board because, in light of the Board taking an affirmative action by moving to dismiss under Rule 12(b)(6), the Board has prejudged the claims in a way that is not in BioScrip's interest.[67] The Plaintiff also argues under *Rales* that a majority of the May 11 Board "lacks independence or is otherwise interested with respect to each of the six Counts" in the Complaint.[68] I address each contention in turn.

*A. Moving to dismiss under Rule 12(b)(6) does not excuse demand.*

The Plaintiff makes the novel argument that the Board has effectively demonstrated demand futility here, in that the Board has "taken an affirmative legal position hostile to BioScrip's interests" and "fail[ed] to act on an informed basis and

---

[65] *Aronson*, 473 A.2d at 814.
[66] *See Park Emps.' I*, 2016 WL 3223395, at *8 n.73. *See also Guttman v. Huang*, 823 A.2d 492, 500–502 (Del. Ch. 2003) (explaining that "the differences between the *Rales* and the *Aronson* tests . . . are only subtly different, because the policy justification for each test points the court toward a similar analysis").
[67] *See* Pl's Reply Br. in Support of its Motion for Leave to Amend ("Pl's Reply Br.") 10. The Plaintiff adds that demand is also excused for the same reasons under *Rales*. *See id.* at 11 n.7.
[68] *Id.* at 16.

13

in good faith" in its authorization of motion practice in this matter.[69]  Specifically, the Plaintiff contends that the Board prejudged the merits of the underlying claims by seeking to dismiss them under Rule 12(b)(6) with prejudice.[70]  The Plaintiff contrasts this case with the more typical derivative case where the directors considering demand would themselves be defendants.  In such a case, according to the Plaintiff, "substantive defense of conduct is expected."[71]  However, the BioScrip Board changed composition from May 7 to May 11, and only two directors on the Board face any liability.  Therefore, the Plaintiff argues that the Board had an opportunity to investigate the claims on the merits but "chose not to do so," and instead moved to dismiss the Amended Complaint under 12(b)(6) within six weeks of receiving it.[72]  The Board, the Plaintiff asserts, could not have chosen this course of conduct consistent with exercising its business judgment.[73]

Although I appreciate the creativity of Plaintiff's argument here, I cannot agree.  The Plaintiff essentially presents a circular argument that demand is excused because it is clear that the Board would reject demand.  However, to my mind, this is short of a demonstration that the Board would *wrongfully* reject demand. The Plaintiff has not alleged facts showing any breach of the Board's fiduciary duties in

---

[69] *See id.* at 12.
[70] *Id.* at 14.
[71] *Id.*
[72] *Id.*
[73] *Id.* at 13.

14

this regard. Rather, the Plaintiff settles for a *res ipsa loquitur*-style argument that the Board's decision to move to dismiss under 12(b)(6) immediately equates to a failure to exercise its business judgment. This, however, approaches tautology. As this Court has noted, "[t]he failure to sue . . . is not enough to demonstrate an 'interestedness' sufficient to sterilize the discretion of the remaining members of the board," and "it is the Board's inaction in most every case which is the *raison d'etre* for Rule 23.1."[74]

Accordingly, I find that the Plaintiff has not pled particularized facts sufficient to create a reasonable doubt that demand would be futile as to the May 11 Board based on those directors authorizing a motion to dismiss under Rule 12(b)(6).

*B. The Plaintiff fails to demonstrate that a majority of the Board lacks independence or is otherwise interested with respect to any of the six counts.*

As mentioned, pursuant to the *Rales* test, a plaintiff must allege particularized facts that create a reasonable doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."[75] "A director cannot consider a litigation demand under *Rales* if the director is interested in the alleged wrongdoing, not independent, or would face a substantial likelihood of liability if suit were filed."[76] When assessing demand

---

[74] *Richardson v. Graves*, 1983 WL 21109, at *3 (Del. Ch. June 17, 1983).
[75] *Rales*, 634 A.2d at 934.
[76] *In re China Agritech, Inc. S'holder Derivative Litig.*, 2013 WL 2181514, at *16 (Del. Ch. May 21, 2013) (internal quotations omitted).

futility, the Court must accept all particularized allegations as true as well as any reasonable inferences that logically follow therefrom.[77] In doing so, I must keep in mind that "Delaware law presumes the independence of corporate directors."[78] Nonetheless, "it is important that the trial court consider all particularized facts pled by the plaintiffs about the relationships between the director and the interested party in their totality and not in isolation from each other," and give such relationships due weight in assessing demand futility.[79] Additionally, when examining a director's purported conflict of interest, "there must be some basis to conclude it is material enough to that director that it could overcome their rational business judgment."[80] Materiality means that an alleged benefit, or an alleged detriment, is "significant enough in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties to the . . . shareholders without being influenced by her overriding personal interest."[81]

The May 11 Board consists of seven directors: Smith, Holubiak, Shackelton, Pate, Goldstein, Nguyen, and Golding.[82] The Plaintiff challenges the disinterestedness of five of the seven directors on the Board: Smith, Holubiak, Pate,

---

[77] *See Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000).

[78] *DiRienzo v. Lichtenstein*, 2013 WL 5503034, at *12 (Del. Ch. Sept. 30, 2013) (citing *Aronson*, 473 A.2d at 815).

[79] *Del. Cty. Empls. Ret. Fund v. Sanchez*, 124 A.3d 1017, 1019 (Del. 2015).

[80] *DiRienzo*, 2013 WL 5503034, at *12.

[81] *Khanna v. McMinn*, 2006 WL 1388744, at *20 (Del. Ch. May 9, 2006) (internal quotations omitted).

[82] *See* Compl. ¶¶ 24–25, 36, 39–43.

16

Goldstein, and Shackelton. I assume, without deciding, that Smith and Holubiak are sufficiently interested to be unable to bring their business judgment to bear. Consequently, for two of Pate, Goldstein, and Shackelton, the Plaintiff must plead particularized facts sufficient to create a reasonable doubt as to their ability to exercise their business judgment in responding to a demand. In this endeavor, the Plaintiff has failed, as explained below.

### 1. Pate

The Plaintiff does not contend that Pate has a direct interest in the proposed derivative litigation, or faces liability therefrom. The Plaintiff's rationale is much more attenuated; it alleges that Pate was the "Global and U.S. Managing Partner of the Healthcare Practice" at PWC from 2007 to 2010, during which time PWC audited *Novartis'* financial statements.[83] As a reminder, non-party Novartis is the pharmaceutical company that allegedly pressured BioScrip to increase its refill rates of Exjade through the use of illegal kickback rebates, among other things.[84] Even accepting all reasonable inferences from these alleged facts and considering them in their totality, the Plaintiff has failed to raise a reasonable doubt as to Pate's ability to exercise his business judgment here.

---

[83] *See id.* at ¶ 41.
[84] *See id.* at ¶¶ 70–85.

For all six counts, the Plaintiff argues that demand is excused as to Pate because of his "conflict involving the Exjade Kickback Scheme."[85] This alleged conflict stems from "Pate's involvement with PWC at the time when PWC had managerial responsibility for auditing Novartis' financial statements and internal controls, and Pate's oversight of PWC's auditing of Novartis."[86] According to the Plaintiff, any litigation over the Exjade Kickback Scheme or finding of a breach of fiduciary duties by the Defendants would reflect negatively on Novartis, and secondarily "would embarrass Pate professionally and negatively affect his professional reputation."[87] Moreover, the Plaintiff contends that Pate would be forced to consider questions about his own competence—or that of others at PWC— as well as the Exjade Kickback Scheme's illegality and Novartis' role in it.[88]

PWC is not a defendant here. The Plaintiff's allegation here is that a global managing partner of an international accounting firm's healthcare practice would find a negative judgment against his firm's former *client* damaging to his personal reputation; so much so that he could not bring his business judgment to bear. I remain unconvinced. The Plaintiff has failed to alleged particularized facts assisting me with this inference. Other than Pate's position as the global and U.S. managing

---

[85] *See* Pl's Reply Br. 21, 27, 29, 32, 35.
[86] *Id.* at 21.
[87] *Id.*
[88] *See id.*

18

partner of PWC's healthcare practice, the Plaintiff points to no further facts to show that Pate was involved in PWC's audit of Novartis, let alone that he, or PWC, was, or should have been, aware that Novartis was offering alleged illegal incentives to BioScrip. Accordingly, I find that the Plaintiff has failed to create a reasonable doubt as to Pate's ability to bring his business judgment to bear on this matter.

## 2. Shackelton and Goldstein

The Plaintiff's arguments that Shackelton and Goldstein could not exercise their business judgment in the case of a demand are reminiscent of its assertions regarding Pate, rejected above. Again, the Plaintiff does not contend that these directors face liability in the proposed derivative action. The Plaintiff relies instead on these directors' relationship with Jefferies, which is a Defendant here. Jefferies served as a financial advisor to BioScrip. The Plaintiff, in Count V, brings an aiding and abetting claim against Jefferies, arguing that Jefferies assisted in the wrongful conduct connected to the Individual Defendants' breach of their fiduciary duties.[89] The Plaintiff's allegations against Goldstein and Shackelton do not concern these two directors' connections to the directors and officers who allegedly, with the advice of Jefferies, breached their fiduciary duties. Rather, the Plaintiff's allegations focus on the connections of Goldstein and Shackelton to Jefferies, the alleged aider and abettor, itself. Alleged connections to an aider and abettor could, I presume,

---

[89] *See* Compl. ¶¶ 288–294.

support demand futility where those facts imply an inability by the connected director to act independently; here, however, I find that the Plaintiff has not met its burden to show demand futility arising out of the relationship between Jefferies and these directors.

The Plaintiff argues that both Shackelton and Goldstein are beholden to Jefferies due to their alleged "substantial relationships" with Jefferies.[90] For Shackelton, the Plaintiff alleges that he is the co-founder and managing partner of non-party Coliseum, and that Shackelton was appointed to the BioScrip Board in connection with a securities purchase agreement with Coliseum.[91] Coliseum, in turn, holds a substantial minority interest in another corporation, LHC, and Shackelton sits on the LHC board of directors.[92] Shackelton's "substantial relationship" with Jefferies allegedly arises from Jefferies acting as a "longtime advisor to LHC" and serving as an underwriter for LHC's IPO and second stock offering; not to mention, the Plaintiff adds, LHC "presenting" at Jefferies' 2016 Annual Healthcare Conference.[93]

With respect to the ties between Jefferies and Goldstein, the Plaintiff concentrates on its allegations that Goldstein is one of "six distinguished members"

[90] Pl's Reply Br. 22–23.
[91] *Id.* at 22 n.15 (citing Compl. ¶ 36).
[92] *Id.*
[93] *Id.*

of a "Global Senior Advisory Board," advising Jefferies' parent company, Jefferies Group LLC. The Plaintiff points out that he was nominated to this advisory board by the joint Chairman and CEO of Jefferies Group LLC, and that a press release "tout[ed] Goldstein as a member of [this] 'distinguished group.'"[94] The Plaintiff also argues that, since 2011, Goldstein has been an advisor to Jefferies & Company Inc., which is an affiliate of Jefferies Group LLC.[95] The Amended Complaint fails to add details regarding the nature, materiality or associated remuneration (if any) of these "advisory" positions.

In light of these alleged facts, according to the Plaintiff, Shackelton and Goldstein have "an incentive to shield Jefferies from liability both for financial and reputational reasons" and are thus unable to consider a demand for Counts I through V.[96] The Plaintiff reasons more fully as follows: The facts alleged in Count I—the *Caremark* Claim—are the "genesis of the claims against Jefferies" and support all other counts; that is, they support Count II's alleged federal securities disclosure violations, Count III's alleged unlawful stock offerings, Count IV's alleged *Brophy* claims for insider selling, and the alleged aiding and abetting of all of these claims by Jefferies in Count V.[97] Therefore, the Plaintiff argues, since "[a]llegations should

---

[94] *Id.* at 22 n.16.
[95] *See id.*; Compl. ¶ 43.
[96] *Id.* at 22.
[97] *Id.* at 23.

21

be analyzed collectively when determining demand futility," both Shackelton and Goldstein, allegedly beholden to Jefferies, "cannot possibly impartially consider the conduct alleged in Count I when this conduct is the foundation of the claims made in Counts II, III, IV and V, all of which implicate Jefferies."[98]

In other words, the Plaintiff is attempting to rebut the presumption that Shackelton and Goldstein are directors capable of exercising their business judgment, on the ground that both directors would have to consider litigation against corporate fiduciaries on behalf of BioScrip. Their judgment is impermissibly tainted in this exercise, because a third party, to whom they are allegedly beholden, could then potentially face liability as an aider and abettor of the underlying claims in such litigation. I assume here that an indirect interest in an aider-and-abettor could, in proper circumstances, disable the exercise of fiduciary duties.[99] I find that the Plaintiff has not pled particularized facts sufficient to raise a reasonable doubt as to

---

[98] *See id.* at 23 (citing *In re Ezcorp Inc. Consulting Agreement Derivative Litig*, 2016 WL 301245 (Del. Ch. Jan. 25, 2016)).

[99] The Plaintiff cites to only two cases for the proposition that a director cannot impartially consider a demand to pursue breach of fiduciary duty when that breach is one of the elements of an aiding and abetting claim. *See id.* at 29, 35. Neither case, however, directly addresses such a proposition; each merely demonstrates the common-sense notion that primary liability, such as a breach of fiduciary duty, is necessary for the existence of secondary liability for aiding and abetting. *See In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 1003 (Del. Ch. 2014) ("An aiding and abetting claim may be summarily dismissed based upon the failure of the breach of fiduciary duty claims against the director defendants.") (internal quotations omitted); *In re Alloy, Inc.*, 2011 WL 4863716, at *14 (Del. Ch. Oct. 13, 2011) ("As a matter of law and logic, there cannot be secondary liability for aiding and abetting an alleged harm in the absence of primary liability.").

the ability of either Shackelton or Goldstein to bring his business judgment to bear, however.

The Plaintiff attempts to establish that Shackelton is beholden to Jefferies by virtue of his indirect minority interest in, and directorship of, a company—LHC—unrelated to this litigation, because that company in turn used Jefferies as its underwriter and received advice from Jefferies for a long period of time. Such an allegation is simply too attenuated to imply that Shackelton is materially personally beholden to Jefferies in some non-economic way. The Plaintiff also fails to allege any fact from which I could draw a reasonable inference that the Jefferies-LHC-Shackelton relationship is economically material to Shackelton. Moreover, with respect to LHC's connection to Jefferies (to the extent pertinent to establishing Shackelton's connection to Jefferies), it seems to me that, if anything, Jefferies would be beholden to LHC, not the other way around, as Jefferies is the entity presumably receiving money from LHC in exchange for its business services. Thus, I find that the Plaintiff has failed to plead particularized facts sufficient to create a reasonable doubt as to Shackelton's ability to exercise his business judgment in considering a demand upon the Board.

The Plaintiff's allegations here also fail as to Goldstein. The Plaintiff attempts to paint Goldstein's membership on the "advisory board" as one of a distinguished professional accomplishment, but fails to allege any facts as to why service on such

23

a board would be material to Goldstein. This Court has held that merely serving on an advisory board does not create a disabling interest even when the plaintiff alleged such service was prestigious and lucrative.[100] Here, the Plaintiff simply alleges that Goldstein serves on a Jefferies' advisory board that Jefferies has referred to as "distinguished" and argues that the prestige of this alone establishes the materiality of such a position to Goldstein.[101] The Plaintiff, however, points to no facts to elucidate the work of the advisory board or that Goldstein receives compensation for his service, let alone that any such compensation might be material to Goldstein.

The Plaintiff also fails to allege facts from which I could reasonably infer Goldstein possesses any personal relationships with Jefferies that would render him an interested party. The Plaintiff does allege that the joint Chairman and CEO of the parent company of Jefferies nominated Goldstein to the advisory board. However, "to render a director unable to consider demand, a relationship must be of a bias-producing nature."[102] Furthermore, "[t]he naked assertion of a previous business

---

[100] *See Khanna*, 2006 WL 1388744, at *20 ("The Amended Complaint does not inform the Court what membership on the [advisory board] actually entails. . . . The allegations provided by the Plaintiffs clearly fail to meet the above-articulated [materiality] standard: they set forth no particularized allegations of compensation actually received by Lynch in return for his [a]dvisory [b]oard service or as to whether such compensation would be material to a director in Lynch's position."). *See also id.* at *2 n.9 ("The Amended Complaint fails to develop sufficiently . . . the nature of [the board of advisors]. It may be that appointment to [the board of advisors] carried significant remunerative benefits, but the Plaintiffs' conclusory pleadings in this respect fail to set forth the detail necessary to satisfy Court of Chancery Rule 23.1.").

[101] *See* Oral Arg. Tr. 38:13–39:2 (Jan. 19, 2017).

[102] *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004).

relationship is not enough to overcome the presumption of a director's independence."[103]  The Plaintiff alleges no further facts with regards to the joint Chairman and CEO of the parent company of Jefferies.  Accordingly, and in light of the shortcomings of its allegations regarding the advisory board already discussed, I am unable to infer that Goldstein's appointment renders him beholden to his appointer—the joint Chairman and CEO—and transitively beholden to his appointer's employer's subsidiary—Jefferies.  I also note that the press releases touting Goldstein as a member of the "distinguished group" of the advisory board tends, if anything, to indicate that *Jefferies* is capitalizing on and beholden to the reputation of Goldstein, rather than the other way around.  I therefore find that the Plaintiff has failed to plead particularized facts sufficient to create a reasonable doubt as to Goldstein's ability to exercise his business judgment.

Our Supreme Court's recent case-law has stressed that when evaluating director independence, personal relationships matter.[104]  This truth is not a license to base findings of demand futility on attenuated relationships naked of supporting allegations implying divided loyalties sufficient to taint the exercise of fiduciary duties, however.  The Plaintiff's contentions regarding the relationships between Jefferies and Goldstein and Shackelton are of this latter variety.

---

[103] *Orman v. Cullman*, 794 A.2d 5, 27 (Del. Ch. 2002).
[104] *See generally Sandys v. Pincus*, 152 A.3d 124 (Del. 2016); *Sanchez*, 124 A.3d 1017.

25

## III. CONCLUSION

For the foregoing reasons, I find that the Plaintiff has failed to plead demand futility under Rule 23.1.  Accordingly, the Amended Complaint is dismissed.[105]  An appropriate form of order is attached.

---

[105] The dismissal of the underlying insider selling and fiduciary duty claims logically compels the dismissal of the aiding and abetting claims against Jefferies and Kohlberg in Counts V and VI as well.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

PARK EMPLOYEES' AND )
RETIREMENT BOARD EMPLOYEES' )
ANNUITY AND BENEFIT FUND OF )
CHICAGO, derivatively and on behalf of )
Bioscrip, Inc., )
                        )
          Plaintiff, )
                        )
      v. )  C.A. No. 11000-VCG
                        )
RICHARD M. SMITH, MYRON Z. )
HOLUBIAK, CHARLOTTE W. )
COLLINS, SAMUEL P. FRIEDER, )
DAVID R. HUBERS, RICHARD L. )
ROBBINS, STUART A. SAMUELS, )
GORDON H. WOODWARD, )
KIMBERLEE C. SEAH, HAI V. TRAN, )
PATRICIA BOGUSZ, KOHLBERG & )
CO., L.L.C., KOHLBERG )
MANAGEMENT V, L.L.C., )
KOHLBERG INVESTORS V, L.P., )
KOHLBERG PARTNERS, V, L.P., )
KOHLBERG TE INVESTORS V, L.P., )
KOCO INVESTORS V, L.P., and )
JEFFERIES LLC, )
                        )
          Defendants, )
                        )
   and )
                        )
BIOSCRIP, INC., )
                        )
        Nominal Defendant. )

**ORDER**

AND NOW, this 18th day of April, 2017,

27

The Court having considered Defendants' Motions to Dismiss pursuant to Rule 23.1 for failure to plead demand futility, and for the reasons set forth in the Memorandum Opinion dated April 18, 2017, IT IS HEREBY ORDERED that Defendants' Motions to Dismiss are GRANTED.

SO ORDERED:

/s/ Sam Glasscock III

Vice Chancellor