**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 24, 2025

Stephen E. Jenkins, Esquire
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

A. Thompson Bayliss, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

RE: ***Joseph R. Eckert III v. Jack Hightower, et al.,***
Civil Action No. 2024-0569-MTZ

Dear Counsel:

Plaintiff Joseph R. Eckert III ("Plaintiff") challenges certain executive compensation packages awarded to the nominal corporate defendant's CEO, who is also its controlling stockholder. Plaintiff did not bring a demand on the company's board of directors, instead arguing that demand was futile. To reach the quorum necessary to plead demand futility, Plaintiff argues certain directors face a substantial likelihood of liability concerning the challenged compensation decisions. Plaintiff alleges the directors acted with a "controlled mindset" and rubberstamped the controller's excessive executive compensation. Because the company has an exculpation provision in its charter, Plaintiff must plead the directors did so disloyally or in bad faith. But Plaintiff has not reached that high bar. This action is dismissed under Court of Chancery Rule 23.1.

## I. BACKGROUND[1]

The facts are drawn from the operative complaint, the documents integral to it, and those incorporated by reference, including documents produced to Plaintiff in response to his books and records demand.[2]

Nominal defendant HighPeak Energy, Inc. (the "Company") is an oil and natural gas exploration and production company.[3] The Company was formed in August 2020 through a combination of various entities controlled by defendant Jack Hightower.[4] Hightower is the Company's CEO, board chairman, and controlling stockholder.[5] Plaintiff is a Company stockholder as of November 8, 2022.[6]

The Company has a Long Term Incentive Plan (the "LTIP") that governs the

---

[1] Citations in the form "Am. Compl." refer to Plaintiff's amended complaint in this action, available at docket item ("D.I.") 12. Citations in the form "Thomson Aff." refer to the affidavit of G. Mason Thomson, available at D.I. 17. Citations in the form "OB at –" refer to Defendants' Opening Brief, available at D.I. 17. Citations in the form "AB at –" refer to Plaintiff's Answering Brief, available at D.I. 20. Citations in the form "RB at –" refer to Defendants' Reply Brief, available at D.I. 25.

[2] *See Bricklayers Pension Fund of W. Pa. v. Brinkley*, 2024 WL 3384823, at *2, n.3 (Del. Ch. July 12, 2024) ("That production was made pursuant to an agreement providing that the documents would be incorporated by reference into any related complaint Plaintiff filed. Those books and records are incorporated by reference." (citation omitted)).

[3] Am. Compl. ¶ 2.

[4] *Id.* ¶ 8.

[5] *Id.* ¶ 2.

[6] *Id.* ¶ 7.

award of options, stock awards, cash payments, and other awards "to share in the value created by the Company's performance."[7] The LTIP is the Company's only equity compensation plan, and it authorized the board to award up to 13% of the Company's outstanding shares of stock.[8]

On August 24, 2020, the Company's board met to discuss the LTIP.[9] At the meeting, Hightower discussed management's recommendation for awarding stock options to certain employees, including Hightower.[10] The board discussed "[t]he rationale for the number of stock option awards for many of the employees."[11] The board designated Hightower and defendant Michael Hollis as members of the committee authorized by the LTIP to direct the Company to reserve up to 13% of the Company's common stock for future issuance under the LTIP.[12] The board granted Hightower 5,953,495 stock options.[13] Hightower received $190,083 in

---

[7] Thomson Aff., Ex. 7 at -0218; Am. Compl. ¶ 22.

[8] Thomson Aff., Ex. 7 at -0219.

[9] Am. Compl. ¶¶ 26–34. At this time, the board consisted of Hightower, Hollis, Covington, Fulgham, Chernosky, Oldham and Michael Gustin. Gustin resigned from the board in 2023. *Id.* ¶ 14.

[10] Thomson Aff., Ex. 7 at -0219.

[11] *Id.*

[12] Thomson Aff., Ex. 8 at -0015.

[13] Am. Compl. ¶ 58. Hightower's options immediately vested and had the exercise price of $10. Thomson Aff., Ex. 8 at -0015; Thomson Aff., Ex. 9 at F-16.

salary and $3,667 in other compensation.[14]  The board also granted stock options to other officers and employees.[15]

On April 28, 2021, the compensation committee met to discuss 2021 compensation.[16]  The compensation committee comprised Hightower, Hollis, and defendants Keith Covington and Sharon Fulgham (the "Compensation Committee" or the "Committee").[17]  The Committee reviewed and discussed ISS stock ownership recommendations and stock ownership guidelines of the Company's peers, and Hightower discussed proposed salary increases for various employees.[18]  After discussion, the Compensation Committee voted to recommend a salary increase for multiple employees including Hightower.  Hightower's salary would increase from $190,083 to $737,500.[19]  Later that day, the board met to discuss the Compensation Committee's recommendations.[20]  Hightower left during discussion of his salary, and after discussion, the board approved the Compensation Committee's

---

[14] Am. Compl. ¶ 32.

[15] Thomson Aff., Ex. 8.  The other stock options had an exercise price of $10, and one third of the options vested immediately.  Thomson Aff., Ex. 9 at F-16.

[16] Am. Compl. ¶ 35.

[17] *Id.* ¶ 17.

[18] *Id.* ¶ 35; Thomson Aff., Ex. 14.

[19] Am. Compl. ¶ 58.

[20] Thomson Aff., Ex. 15 at -0216.

recommendation.[21]

On November 4, 2021, the Compensation Committee met to discuss granting stock options, restricted shares, and bonuses to Company employees including Hightower.[22] The Committee discussed management's recommendations, and "after discussion" of the information presented to the Committee, they voted to recommend Hightower receive 164,500 stock options, 1,385,500 restricted shares, and a $650,000 bonus.[23] The board met and approved the Committee's recommendation.[24]

On April 13, 2022, the Compensation Committee met. "Hightower discussed level of salaries of the Company's . . . officers compared with the peer group."[25] And "[b]ased on th[at] analysis," the Compensation Committee discussed salary increases for Hightower, Hollis, and other officers, and voted to recommend those compensation changes to the board.[26] The Compensation Committee voted to recommend granting Hightower 377,500 stock options, and options to other officers.

---

[21] Am. Compl. ¶ 37; Thomson Aff., Ex. 15.

[22] Am. Compl. ¶¶ 38–42.

[23] Thomson Aff., Ex. 17 at -0240–42.

[24] Thomson Aff., Ex. 16 at -0142–45.

[25] Thomson Aff., Ex. 20 at -0236; Am. Compl. ¶ 47.

[26] Thomson Aff., Ex. 19 at -0236.

The board met later that day, and Hightower discussed the Compensation Committee's recommendations, which the board approved.[27]

On November 30, the Compensation Committee convened again. "Mr. Hightower discussed the recommended level of salaries and bonuses for all employees compared with the Company's peer group. The Committee discussed the salaries and bonuses for each . . . officer individually as well as the average level of salaries and bonuses for the collective employee base."[28] Based on that analysis, the Committee voted to recommend a $995,000 bonus for Hightower, and a 33% increase in his salary—from $1,500,000 to $2,000,000.[29] The board met later that day and approved the Compensation Committee's recommendations. At the board meeting, Hightower "discussed level of salaries and bonuses of the Company's . . . officers compared with the peer group as reviewed by the Compensation Committee," and after discussion, the board approved the Compensation Committee's recommendations.[30]

On December 18, 2023, Hightower "discussed the Company's

---

[27] Am. Compl. ¶ 51; Thomson Aff., Ex. 21 at -0212.

[28] Thomson Aff., Ex. 22 at -0244.

[29] Am. Compl. ¶ 52.

[30] Thomson Aff., Ex. 23 at -0233.

recommendations to the [Compensation] Committee regarding proposed bonuses for Company employees."[31]  After discussion, the Compensation Committee voted to recommend a $1,605,000 bonus for Hightower, and a salary increase to $2,400,000.[32]  "After discussion," the board approved the Compensation Committee's recommendation.[33]

For each of these decisions, the Committee did not retain a compensation consultant.  And in each case, Hightower abstained from voting on his own compensation.  Hightower left the room during the April 2021 vote[34] but not during other votes, despite the compensation committee charter requiring Hightower's absence.[35]

---

[31] D.I. 25 Ex. 29 at -0186.

[32] *Id.* at -0187; Am. Compl. ¶¶ 55–56.

[33] Thomson Aff., Ex. 2 at -0184.

[34] Thomson Aff., Ex. 15 at -0216.

[35] Am. Compl. ¶ 18–20.  The defendants argue the Court should infer Hightower was not present during voting on his compensation because the minutes are silent as to whether he left.  But on a motion to dismiss, I must accept Plaintiff's specific allegation that Hightower was present as true where the minutes do not directly rebut that allegation. *See Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016) ("The incorporation-by-reference doctrine permits a court to review the actual document to ensure that the plaintiff has not misrepresented its contents and that any inference the plaintiff seeks to have drawn is a reasonable one.  The doctrine limits the ability of the plaintiff to take language out of context, because the defendants can point the court to the entire document."), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019); *Amalgamated Bank*, at 798 ("The court will 'draw all inferences from those

Plaintiff initiated this stockholder derivative action on May 29, 2024.[36]  The complaint brings two causes of action:  breach of fiduciary duty against all defendants, and unjust enrichment against Hightower.[37]  At the time of filing, the Company's board of directors consisted of the Compensation Committee and defendants Jay Chernosky, Jason Edgeworth, and Larry Oldham.[38]  Plaintiff filed an amended complaint on September 30, 2024.[39]

## II.    ANALYSIS

The defendants moved to dismiss under Court of Chancery Rule 23.1 and 12(b)(6).[40]  The motion to dismiss briefing concluded on February 27, and oral argument was held on March 13.[41]  The defendants' Rule 23.1 motion is granted.

### A. Plaintiff Must Plead Bad Faith.

"A stockholder may pursue a derivative claim on behalf of a corporation only if either: '(a) she has first demanded that the directors pursue the corporate claim

---

particularized facts in favor of the plaintiff, and not the defendant.'" (quoting *Del. Cty. Empls. Ret. Fund v. Sanchez*, 124 A.3d 1017, 1022 (Del. 2015))).

[36] D.I. 1.

[37] Am. Compl. ¶¶ 91–101.

[38] *Id.* ¶¶ 9–16, 85.

[39] D.I. 12.

[40] D.I. 14.  Because I find the demand is not excused and dismissal is appropriate, I do not reach the defendants' Rule 12(b)(6) arguments.

[41] D.I. 25.

and they have wrongfully refused to do so; or (b) such demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation.'"[42] "Plaintiff did not make a demand and therefore the complaint 'must be dismissed unless it alleges particularized facts showing that demand would have been futile.'"[43] "[T]he demand requirement is not excused lightly."[44]

Under Court of Chancery Rule 23.1, a derivative complaint "must state with particularity any effort by the derivative plaintiff to obtain the desired action from the entity; and the reasons for not obtaining the action or not making the effort; and allege facts supporting a reasonable inference that the derivative plaintiff has standing to sue."[45] In *Zuckerberg II*, our Supreme Court adopted a three-part demand futility test.[46] It asks the following on a director-by-director basis:

---

[42] *Brinkley*, 2024 WL 3384823, at *12 (quoting *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004)).

[43] *Brinkley*, 2024 WL 3384823, at *12 (quoting *Ryan v. Gursahaney*, 2015 WL 1915911, at *5 (Del. Ch. Apr. 28, 2015), *aff'd*, 128 A.3d 991 (Del. 2015)).

[44] *United Food & Com. Workers Union & Participating Food Indus. Empls. Tri-State Pension Fund v. Zuckerberg* (*Zuckerberg II*), 262 A.3d 1034, 1049 (Del. 2021).

[45] Ct. Ch. R. 23.1(a) (formatting altered). Rule 23.1 was amended on June 14, 2024. No substantive revisions were made to the relevant portion. *In re: Amendments to Rules 1–6, 8, 9, 11–15, 23, 23.1, 79, 79.1, 79.2 and 174 of the Court of Chancery Rules, Section I, II, III, IV, X, and XVI* at 59 (Del. Ch. May 31, 2024) (ORDER).

[46] *Zuckerberg II*, at 1059.

(i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;

(ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and

(iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.[47]

"If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile."[48]

To plead demand futility for the Company's seven-member board, Plaintiff must plead at least four of the directors would not have been able to consider a demand concerning Hightower's compensation decisions for one of three reasons listed in *Zuckerberg II*. Plaintiff does not challenge Chernosky, Edgeworth, or Oldham's impartiality. And the defendants concede Hightower and Hollis cannot consider a demand. So Plaintiff must plead Covington and Fulgham were incapable of making an impartial decision regarding the demand. Plaintiff chose *Zuckerberg*'s door number two: substantial likelihood of liability in connection with the underlying compensation decisions. Plaintiff does not attempt to plead demand is

---

[47] *Id.*

[48] *Id.*

futile because Covington and Fulgham lack independence from Hightower or received a material benefit.

"Demand is excused as to any director who 'faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand.'"[49] "[E]ach director is presumed to have acted in conformity with her fiduciary duties," and to rebut this assumption, Plaintiff must "make a threshold showing, through the allegation of particularized facts, that [his] claims [against each director] have some merit."[50] "[A]s is true in other contexts, the plaintiff['s] well-pleaded factual allegations must be taken as true and the complaint has to be read in the light most favorable to the plaintiff[]."[51] "[H]owever, '[v]ague or conclusory allegations do not suffice to challenge the presumption of a director's capacity to consider demand,' and the plaintiff's allegations must satisfy the 'stringent requirements of factual particularity.'"[52]

Plaintiff's target is made smaller by the exculpation provision in the

---

[49] *In re Trade Desk, Inc. Deriv. Litig.*, 2025 WL 503015, at *20 (Del. Ch. Feb. 14, 2025) (quoting *Zuckerberg II*, at 1059)).

[50] *Trade Desk*, 2025 WL 503015, at *21 (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)).

[51] *Brehm v. Eisner*, 746 A.2d 244, 268 (Del. 2000).

[52] *Trade Desk*, 2025 WL 503015, at *9 (quoting *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007), *as revised* (Aug. 20, 2007)).

Company's charter. Plaintiff must plead with particularity that Covington and Fulgham breached their duty of loyalty.[53] Plaintiff does not attempt to show they approved Hightower's compensation out of self-interest; rather, Plaintiff tries to plead bad faith. To accomplish that task, "Plaintiff[] must plead facts giving rise to a reasonable inference that each of the [d]irector [d]efendants acted with scienter."[54] "Although bad faith conduct is not precisely defined, it includes 'conduct motivated by an actual intent to do harm' or 'a conscious disregard for one's responsibilities.'"[55] And "'[w]here (as here) there is no adequate pleading of conflicted interests or lack of independence on the part of the directors, the scienter requirement compels that a finding of bad faith should be reserved for situations where' it is reasonably conceivable that 'the nature of the director's actions can in no way be understood as in the corporate interest.'"[56] Plaintiff's task is not easy.

### B. Plaintiff Has Not Pled A Substantial Likelihood of Liability.

Plaintiff asserts Covington and Fulgham face a substantial likelihood of liability because they rubberstamped Hightower's compensation as decided in late

---

[53] *In re Cornerstone Therapeutics, Inc. S'holder Litig.*, 115 A.3d 1173, 1180 (Del. 2015).

[54] *Trade Desk*, 2025 WL 503015, at *22.

[55] *Id*. at *22 (quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64, 66 (Del. 2006)).

[56] *Trade Desk*, 2025 WL 503015, at *22 (quoting *In re USG Corp. S'holder Litig.*, 2020 WL 5126671, at *29 (Del. Ch. Aug. 31, 2020)).

2022 and 2023.[57]  Plaintiff alleges Hightower's compensation was excessive.[58]  He seeks to establish a nonexculpated breach of the duty of loyalty by arguing Covington and Fulgham "operat[ed] under a 'controlled mindset' in connection with approving a transaction benefiting the Company's controlling stockholder" and by "overseeing an unfair process."[59]

This Court recently grappled with allegations that demand was futile because directors granted excessive compensation under a "controlled mindset" in *In re Trade Desk, Inc. Derivative Litigation*.[60]  As explained there,

> "[C]ontrolled mindset" describes a latent inability to perceive a conflict that is, at its core, a process failure.  Like other mere process failures, it can, if combined with other well-pleaded allegations, contribute to a broader constellation of facts that support a finding or reasonable inference of disloyal conduct.  But a stockholder plaintiff cannot merely slap a "controlled mindset" label onto a process or result with which it disagrees and expect to wrest control of a claim from a majority independent and disinterested board of directors.[61]

---

[57] AB at 16–17.  Plaintiff acknowledges he does not have standing to challenge any compensation decisions before his date of stock ownership:  November 8, 2022.  While I may generally consider the earlier decisions to contemplate whether there is a pattern of conduct, I make no determinations as to whether those decisions themselves reflect a substantial likelihood of liability.

[58] Am. Compl. ¶¶ 58–75.

[59] *Id.* ¶ 94; AB at 22.

[60] 2025 WL 503015.  *Trade Desk* has been appealed to the Delaware Supreme Court.  *See In re The Trade Desk, Inc. Deriv. Litig.*, No. 114, 2025 (Del.).

[61] *Trade Desk*, 2025 WL 503015, at *24.

The defendants assert this action must be dismissed because Plaintiff's allegations do not plead bad faith by Covington and Fulgham.[62] I agree. The complaint and minutes incorporated by reference present a streamlined process, but not bad faith.

For the late-2022 decision, the Compensation Committee, "discussed the recommended level of salaries and bonuses for all employees compared with the Company's peer group" and voted to recommend Hightower's bonus "[b]ased on that analysis."[63] That same day, the full board discussed the same salaries and bonuses, considered peer group data, and approved Hightower's bonus.[64]

For the 2023 compensation decisions, the Compensation Committee "discussed the Company's recommendations to the Committee regarding proposed" bonuses and 2024 salaries, and "[a]fter discussion," Covington, Fulgham, and Hollis voted to recommend Hightower's bonus and salary increase to the board.[65] "After discussion," the board approved the Compensation Committee's recommendations.[66] Hightower abstained from all votes on his compensation.

---

[62] *See generally* AB at 26–42; RB at 5–15.

[63] Thomson Aff., Ex. 22 at -0244.

[64] Thomson Aff., Ex. 23.

[65] D.I. 25 Ex. 29 at -0186–87.

[66] Thomson Aff., Ex. 2.

Plaintiff says Covington and Fulgham "did nothing" and "completely deferred" to Hightower.[67] He alleges no negotiation occurred and that "[t]he minutes do not disclose what metrics (if any) were used by the Compensation Committee to determine Hightower's compensation."[68] Plaintiff says Hightower dominated the board by leading discussions and being present during votes on his compensation, and that the management reports were "inherently flawed" because Hightower "controlled" management.[69]

Plaintiff relies on many of same cases relied upon by the *Trade Desk* plaintiff[70]: *In re CBS S'holder Class Action & Derivative Litigation,*[71] *In re Viacom*

---

[67] AB at 25, 30. Plaintiff cites case law saying that "[w]hile there may be instances in which a board may act with deference to corporate officers' judgments, executive compensation is not one of those instances" to argue that Covington and Fulgham improperly deferred to management's analyses. *See* AB 30–31 (quoting *Off. Comm. of Unsec. Creds. of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, at *12 (Del. Ch. Aug. 24, 2004)). But *Elkins* does not say directors can never consider management recommendations or reports on executive compensation. It explains that "the board must exercise its own business judgment in approving an executive compensation transaction." *Elkins*, 2004 WL 1949290, at *12. Plaintiff has not sufficiently pled this board failed to do that.

[68] AB at 26.

[69] *Id.* at 27. Any argument that Hightower's compensation awards originated with him are conclusory. Plaintiff pleads no allegations showing Hightower had control over management, other than pointing to Hightower's status as controller and CEO. *E.g.*, Am. Compl. ¶ 3 ("Hightower exercises control and influence over the Company's management . . . ."); Am. Compl. ¶¶ 34, 78.

[70] Plaintiff's counsel here represented the plaintiff in *Trade Desk*.

[71] 2021 WL 268779 (Del. Ch. Jan. 27, 2021).

*Inc. S'holders Litigation*,[72] and *Berteau v. Glazek*.[73] But as in *Trade Desk*, "[a] brief review of those cases shows much more controller interference and resulting influence than what can be reasonably inferred here."[74] *Trade Desk* explained that *Berteau* narrated particularized and extreme facts of disloyalty, while *CBS* and *Viacom* painted a detailed picture of a retributive controller involved in a subservient board's plainly flawed process.[75]

As in *Trade Desk*, Plaintiff's allegations here do not approximate the fact patterns in *CBS*, *Viacom*, or *Berteau*.[76] Plaintiff pleads no threats or retributive behavior by Hightower, or any other conduct that would cause Fulgham and Covington to act disloyally. The process as documented appears thin; but Plaintiff

---

[72] 2020 WL 7711128 (Del. Ch. Dec. 29, 2020).

[73] 2021 WL 2711678 (Del. Ch. Jun. 30, 2021).

[74] *Trade Desk*, 2025 WL 503015, at *24.

[75] *Id.* at *25–26.

[76] Other cases Plaintiff cites as support also do not disturb my findings. *See, e.g.*, *In re S. Peru Copper Corp. S'holder Deriv. Litig.*, 52 A.3d 761, 797 (Del. Ch. 2011) ("Although I conclude that the Special Committee did in fact go further and engage in negotiations, its approach to negotiations was stilted and influenced by its uncertainty about whether it was actually empowered to negotiate. The testimony on the Special Committee members' understanding of their mandate, for example, evidenced their lack of certainty about whether the Special Committee could do more than just evaluate the Merger."); *In re Loral Space & Commc'ns Inc.*, 2008 WL 4293781, at *26 (Del. Ch. Sept. 19, 2008) (explaining in post-trial entire fairness opinion there was a "sheer accumulation of examples of timorousness and inactivity that contribute[d] to [the] conclusion that th[e] Special Committee did not fulfill its intended function").

has not pled a controlled mindset tantamount to bad faith. At bottom, Plaintiff disagrees with the challenged compensation, and believes the directors should have done more, pushed back more, or asked more questions. Even making the necessary inferences in Plaintiff's favor, the allegations and related minutes "pale[] in comparison to the controllers' conduct in *CBS*, *Viacom*, . . . and even *Berteau*."[77] The minutes reflect that Fulgham and Covington—disinterested and independent fiduciaries—discussed compensation for Hightower and other employees in view of management's recommendations and peer data. Hightower's mere presence, even at the vote in violation of the Compensation Committee charter, does not establish that he controlled Covington and Fulgham's votes, especially considering Plaintiff does not challenge their independence.[78] His presence and position in management do not establish that Covington and Fulgham acted with a "controlled mindset" such that they breached their duties of loyalty in approving the challenged compensation. Plaintiff's conclusory allegation that they acted with a "controlled mindset" fails to dislodge the presumption that they acted independently and in good faith.

And to the extent Plaintiff alleges an oversight failure by "overseeing an unfair

---

[77] *Trade Desk*, 2025 WL 503015, at *27.

[78] *See id.* at *26 (explaining that in *CBS, Viacom, Berteau* and other cases, "this court focused on directors' responses to interfering actions, not merely the presence of a controlling stockholder, as the pertinent objective indicia").

process and then approving an unfair compensation package for Hightower," that also fails to establish a substantial likelihood of liability.[79] Oversight claims are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."[80] Plaintiff must allege that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."[81] "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations."[82] Plaintiff has not alleged a failure to implement reporting systems, nor has he pled a conscious failure to oversee its operations.

Plaintiff has not met his burden.

## III.   CONCLUSION

Plaintiff failed to plead demand futility. This matter is dismissed pursuant to Rule 23.1.

---

[79] Am. Compl. ¶ 94; AB at 1 ("Allowing Hightower to effectively set his own pay, the Board abdicated its duty of oversight . . . .").

[80] *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

[81] *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

[82] *Id.*

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*